This is an appeal from a decree of distribution. Sophia D. Wick died February 5th, 1911, leaving a will dated April 21st, 1909, in which she created a trust of the residue of her estate, naming one Charles W. Miller, trustee, who, after the death of the life tenant, Clara Wick, in June, 1933, filed his account. Before the decree for distribution from which this appeal is taken, R. Cooper Brown, Esq., was substituted as trustee. *Page 469 
That part of the paragraph of the will of testatrix which is pertinent to the questions arising in this appeal is as follows:
"All the rest, residue and remainder of my Estate, real, personal and mixed, whatsoever and wheresoever, I give, devise and bequeath unto my Executor hereinafter named, IN TRUST, nevertheless, to, for and upon the following uses, intents and purposes, that is to say, in Trust, to invest, reinvest and keep the same invested in good lawful securities, and to collect, recover and receive the rents, income, issues and profits therefrom, and after payment of all commissions, taxes, charges, repairs and necessary expenses, etc., to pay thereout unto the said CLARA WICK, for and during all the term of her natural life, the sum of Seventy-five Dollars, Quarterly-Yearly provided however the said CLARA WICK shall so long remain unmarried. In case the said CLARA WICK should marry, then the sum of Thirty-five Dollars only is to be paid to the said CLARA WICK Quarter-Yearly during the term of her natural life. Any income collected and not disbursed and remaining in the hands of my said Executor and Trustee over and above the amount required to be paid to the said CLARA WICK during her life shall form and become part of my residuary estate. From and immediately after thedecease of my said Sister, CLARA WICK, then I give, devise andbequeath the said rest, residue and remainder of my estate which may at that time be in the hands of my said Executor andTrustee, as follows: One full equal half part thereof unto myBrother and Sisters who may at the time of the decease of thesaid CLARA WICK be living and the lawful issue of any such ofthem who may at such time be deceased, absolutely and in feesimple, share and share alike, the issue in all cases taking andreceiving only the deceased parent's share." (Italics mine.)
The remaining part of the paragraph relates to the disposition of the other half part of the residuary estate about which there is now no controversy.
At the time testatrix made her will on April 21st, 1909, she had then living:
(a) A sister, Louisa Schada, who died June 17th, 1917, leaving one son, Anthony F. Schada, now deceased, of whose estate the West Jersey Trust Company of Camden, New Jersey, is administrator;
(b) A sister, Clara Wick, who died in June, 1933, who had one son, William F. Diedrich, who died in August, 1925, leaving surviving him a widow and three children; *Page 470 
(c) A brother, Charles Wick, Sr., who died December 20th, 1923, leaving him surviving five children;
(d) A sister, Alice Wick Bell, who died January 9th, 1910, leaving five children her surviving, of whom all died without issue prior to the death of the life tenant, Clara Wick, except Lillian Hughes Bell, the appellant herein, and Edna Bell Giles, both of whom are now living.
By the decree of the orphans court, it was ordered that the half portion of the residuary estate which was immediately to be distributed at the time of the decease of Clara Wick, as provided in her will, should go to the issue of Louisa Schada and Charles Wick, Sr., excluding from participation therein Lillian Hughes Bell and Edna Bell Giles, children of Alice Wick Bell, who died after testatrix made her will but prior to her decease.
This appeal was taken on behalf of Lillian Hughes Bell and alleges that the decree is erroneous in that it did not provide that the issue of Alice Wick Bell (being Lillian Hughes Bell and her sister, Edna Bell Giles) should share equally with the issue of Louisa Schada and the issue of Charles Wick, Sr., in one-half the balance of the trust estate remaining in the hands of the trustee.
By the decree, the issue of Clara Wick, a sister of testatrix, were excluded as distributees, as were the issue of Emma Werner,nee Wick, and William Wick, the testatrix' sister and brother who died before the making of the will, from which part of the decree no appeal is taken by the parties in interest, and there is no purpose in discussing their respective rights in the absence of any question being raised in this court and because of the fact that I concur with the orphans court in the conclusions reached so far as these persons are concerned.
I do not concur, however, with the decree in so far as it excludes from participation in the distribution of the residuary estate by Lillian Hughes Bell and her sister, Edna Bell Giles, the children of testatrix' sister, Alice Wick Bell, who pre-deceased testatrix, but who was living at the time of the making of her will. This calls for a construction of the will *Page 471 
as affecting the rights of these persons and determining the intention of the testatrix. It will be noted that when the testatrix made her will she had one brother and three sisters living. One of these sisters was Clara Wick, the life tenant, who survived her and likewise survived her other two sisters, Louisa Schada and Alice Wick Bell, and her brother, Charles Wick, Sr. Having these persons in mind she made the provisions in the will as already quoted, and as particularly affecting this controversy she directed that one-half of her residuary estate after the decease of Clara Wick, should go "unto my brother and sisters who may at the time of the decease of the said Clara Wick be living and the lawful issue of any such of them who may at such time be deceased, absolutely and in fee-simple, share and share alike, the issue in all cases taking and receiving only the deceased parent's share." It seems to me that the will must be constructed in the light of the circumstances which existed at the time it was made. This rule, as expressed by Vice-Chancellor Pitney inGray v. Hattersley, 50 N.J. Eq. 206, is, "the rule that a will, for some purposes, speaks from its date, and for other purposes from the death of the testator, applies only to the ascertainment of the property which passes by it. It relates to the effect and operation of the instrument rather than to its construction. It has no application to a case where the meaning of language is involved."
Vice-Chancellor Backes, in Dulfon v. Keasbey, 111 N.J. Eq. 223,
concisely expressed his view as follows: "The will speaks the testamentary intention as of its date; its effect is as of the testator's death."
Page, the eminent authority on the law of wills, in 2 Page onWills 2365, § 1415, says:
"In any case, wherever it is necessary to invoke extrinsic evidence to assist in the construction of a will, it is recognized by the great weight of authority that evidence of the facts and circumstances, existing at the time of the execution of the will, and known to testator, with reference to which he drew the instrument, the meaning of which is in question, is necessary, not to contradict the meaning of the will, but to enable the court to place itself in his situation and see things as he saw them, and to apply his language as he understood and intended it." *Page 472 
It seems to me that the rule of construction to be applied in this case is that as defined by Vice-Chancellor Pitney in Gray
v. Hattersley, supra. The testatrix, when she executed her will, knew that she had one brother and three sisters living, and had in mind that she wanted to give to one of these sisters, Clara Wick, a life income from her residuary estate, and then at her death, to divide the part now in question among the other two sisters and her brother and their issue. It seems that she must have had in mind, when she said that this estate should be divided among these sisters and brother living at the time of the death of Clara Wick and their issue if they be deceased, a direct provision for the issue under these conditions. As it happened, one of the sisters, the mother of the appellant herein, pre-deceased testatrix; the sister, Louisa Schada, and the brother, William Wick, died afterward, but pre-deceased Clara Wick, so that at the time when this part of the residuary estate was to be distributed, all of those subject to her bounty were deceased and there remained only issue of these sisters and brother to participate. She must have had in mind that a situation of this kind might occur because she made provision for the issue of these deceased sisters and brother.
It is contended that Alice Wick Bell or her issue could take no interest because she pre-deceased testatrix. This does not seem to be a reasonable construction of testatrix's intention because she not only gave to her sisters and brother an equal part in the residuary but she added lawful issue of any predeceasing Clara Wick, using the language, "and the lawful issue of any such of them who may at such time be deceased, absolutely and in fee-simple, share and share alike, the issue in all cases taking and receiving only the deceased parent's share." It is quite clear to me that testatrix intended to benefit the issue of Alice Wick Bell if she should fail to survive the life tenant, and I know of no rule of construction which would defeat the claim of these two surviving children of Alice Wick Bell.
The language of the will, I think contemplates an immediate gift over to the issue of Alice Wick Bell which vested *Page 473 
in them upon the death of the testatrix. In this case the gift to the issue is original rather than substitutional and the distinction between original and substitutional gifts is well defined in the case of Lanphier v. Buck, 62 Eng. Rep. 704, in which Sir R.T. Kindersley, then vice-chancellor of England, defined that distinction as follows:
"A gift to issue is substitutional when the share which the issue are to take is by a prior clause expressed to be given to the parent of such issue; and a gift to issue is an original
gift when the share which the issue are to take is not by a prior clause expressed to be given to the parent of such issue. Thus, in the present case, the gift to the issue of such nephews and nieces as shall die before the termination of the prior limitations is an original and not a substitutional gift to the issue because the share which is to be taken by the issue of any pre-deceased nephew or niece is not by any prior clause expressed to be given to such pre-deceased nephew or niece. The issue who are to take are the issue of such nephews and nieces as shall die before the termination of the prior limitations, and nothing is given to such nephews and nieces as die before the termination of the preceding limitations, the gift to nephews and nieces being exclusively to such as shall be living at that time. On the other hand, if the gift be thus — on the death of A., without issue, to nephews and nieces (generally) followed by a direction that if any of them shall die before the termination of the preceding limitations the issue of such nephew or niece shall take his or her share — then the gift to the issue is substitutional, because the share which the issue are to take is by the prior clause given, in the first instance, to the nephew or niece, the parent of such issue."
The limitation as set forth in that case was "to Mary Buck for life, and after her death to the testator's nephews and nieces then living, and the issue of such of them as might be dead, such issue to be entitled to its parent's share only;" the limitation in the instant case after the death of Clara Wick is, "unto my brother and sisters who may at the time of the decease of the said Clara Wick be living and the lawful issue of any such of them as may at such time be deceased, *Page 474 
absolutely and in fee-simple share and share alike, the issue in all cases taking and receiving only the deceased parent's share." I see no distinction between the two gifts.
My conclusion is that although Alice Wick Bell died prior to the testatrix, the gift over to the children of Alice Wick Bell, now living, is not defeated, and therefore they are entitled to participate in the distribution of such residue to the extent which their parent would have taken had she survived both the testatrix and Clara Wick.
The decree of the orphans court should be modified, in accordance with these conclusions. *Page 475