**CENTRAL NATIONAL BANK OF CLEVELAND, Exr., Plaintiff, v. COTTIER et, Defendants.**

Probate Court, Cuyahoga County.

No. 498794. Decided March 1, 1958.

L. C. Wykoff, Arter, Hadden, Wykoff & Van Duzer, Cleveland, for the Trustee.

Wm. M. Byrnes, Wm. A. Kane, Cleveland, for Catholic Charities Corporation of Cleveland.

Edwin D. Williams, Cleveland, for The Cleveland Protestant Orphan Asylum.

Robert Merkle, Cleveland, for defendants, Noreen S. Cottier and Henry Cottier, a. k. a. Harry Cottier.

## OPINION

By KINDER, J.

This is an action by the executor under the will of Eleanor Gregory, deceased, seeking a declaratory judgment as to the interpretation and effect to be given to certain bequests contained in testatrix's will.

Under Item III there was a bequest to Noreen Cottier of "twenty (20) shares of my common stock of The Youngstown Sheet and Tube Company." Likewise, a bequest was made to Harry Cottier of "twenty (20) shares of my common stock of The Youngstown Sheet & Tube Company." Another bequest was to William Schaumann of "twenty-five (25) shares of my common stock of The Sherwin-Williams Company." Further, there was a bequest of "five (5) shares of my capital stock of The Union Trust Company" to Harry Cottier.

Testatrix's will was executed on February 8, 1927. On the 14th day of September, 1927, testatrix executed a codicil and likewise a second codicil on November 7, 1930. In each codicil testatrix ratified and confirmed the provisions of her will. Decedent became mentally incompetent in July, 1935, and died on February 14, 1954.

In September of 1929, testatrix received a 20% stock dividend on her Youngstown Sheet and Tube Company stock and in September of 1950, she was in receipt of a further stock dividend of 100%, so that each such twenty shares bequeathed to Noreen Cottier and Harry Cottier, respectively, had thereby become forty-eight shares at the time of her death. At the time of the execution of the will, testatrix held additional stock in The Youngstown Sheet and Tube Company.

In 1947 she received a stock dividend of 200% on her Sherwin-Williams stock, with the result that twenty-five shares became seventy-five shares which she held at the time of her decease. Again however, at the time the will was executed, she was the owner of shares of The Sherwin-Williams Company, other than the twenty-five shares bequeathed to William Schaumann.

At the time of the execution of the will, testatrix owned ten shares of The Union Trust Company stock, five shares of which were bequeathed to Harry Cottier. In 1928 her ten shares became forty shares due to a reduction in the par value thereof. In 1932 the testatrix purchased thirty additional shares so that her total holdings of this stock amounted to seventy shares. As to this stock, testatrix paid in 1934 an assessment by the Superintendent of Banks at the rate of $25.00 a share. This represented her stockholders liability as an owner of such stock. As a result of having paid such assessment she received three and one-half shares of stock in The Union Bank of Commerce and prior to her death became and was at the time of her death the owner of seventy shares of stock in The Union Bank of Commerce, a new corporate entity distinct from that of The Union Trust Company.

As to The Youngstown Sheet and Tube Company stock and the stock of The Sherwin-Williams Company, the question is whether the respective legatees thereof are to be limited to the number of shares bequeathed to each of them, or are entitled in addition to the stock acquired by testatrix in such companies by way of stock dividends declared on such stock.

As to The Union Trust Company stock, the question is whether Harry Cottier is entitled to shares of The Union Bank of Commerce stock as a result of her bequest to him of five shares of the common stock of The Union Trust Company.

Under the authorities cited in the elaborate briefs filed by the parties the controlling factor is the matter of the intent of the testatrix as such intent is to be found from the will itself and such other facts and circumstances as are relevant and material to this question.

The rule has been thus stated:

"The intention of a testator must be ascertained from the language used in the will, as applied to the subject-matter and read in the light of surrounding circumstances at the time of the execution thereof, and not with reference to the circumstances at the time of the death of the testator, except in so far as the latter are connected with the former." 41 O. Jur., Section 468; see also Page on Wills, 938.

From an examination of the authorities the prevailing rule seems to be that in case of bequests of corporate stock, stock dividends thereon received after the execution of the will, do not go to the legatee in the absence of an indication in the will itself or other relevant circumstances that it was the intention of the testatrix that such stock dividends follow the bequest. 172 A. L. R. 365. Further, under the authorities it seems quite clear that each case must stand on the particular instrument involved and the attendant relevant facts. It seems to the Court, therefore, that resort must be had to the language and phraseology of this will and the two codicils. Neither of the codicils contain any provisions of relevance, nor reference to these stock holdings or the bequests under consideration. The 20% stock dividend on The Youngstown Sheet and Tube Company stock antedated the codicil of September 14, 1927. The other stock dividends in question were declared and the acquisition of The Union Bank of Commerce stock took place subsequent to the second codicil dated November 30, 1930.

This will is unusual in the meticulous detail of its provisions and thus considered in the opinion of the Court not only fails to disclose an intent that the stock dividends declared on The Youngstown Sheet and Tube Company and The Sherwin-Williams stock should go to the respective legatee, but on the contrary the character of the will and its phraseology repels such intent.

Item III of the will, Paragraph K, is as follows:

"My Executor shall have absolute and final discretion in interpreting and defining all terms used in this ITEM II * * *. It is also my intent, except in the case of the cash bequests, that if before my death, I shall in any manner dispose of any or all of the shares of stock or other property mentioned in this Item, so that at the time of my death I shall not own all of the above named property specifically bequeathed, then the bequests directly affected shall to that extent be void, and if there shall remain in my estate some but not enough of the property to meet certain of the above bequests, then such remainder so available shall be divided by my Executor as nearly as he may be able to do so among the legatees directly affected in proportion to the original distributions of the particular kind of property provided for in this Item, and to the

extent of any deficiency in such bequests the bequests shall be void, it being my intent that all of the bequests in this Item shall be limited to the specifically described property, if any, which shall be a part of my estate at the time of my death."

Again, in Item VI, appears the following:

"It is my desire, however, that the specific bequests made in this Will shall be disturbed as little as possible and it is my desire to avoid as far as possible the necessity for the sale of any portion of my estate to meet the payment of charges or claims against it, or to provide for any cash bequest above cited."

It is to be noted that the will (Item V) contains a residuary clause providing for the creation of a trust as to such residual estate for the benefit of certain designated orphanages. It remains to be remarked that the bequests made to the various individuals of The Youngstown Sheet and Tube Company stock and The Sherwin-Williams Company stock did not constitute all of such stocks held by the testatrix.

These facts, plus the general character and tenor of the will itself and its two codicils, preclude, in the opinion of the Court, any intent by the testatrix that the stock dividends declared are to go to these legatees. On the contrary it is the Court's opinion that such stock dividends become part of the residuary estate. A decision in the case of Clegg v. Lippold, 123 N. E. 2d, 549, is urged as being contrary to the conclusion hereinabove reached. It seems to the Court that such case is distinguishable in that it involved, among other things, a corporate reorganization providing for a stock split-up. Furthermore; to the extent that the conclusion of Judge Love as evidenced by his elaborate and learned opinion is to be considered as determining a stock dividend as such shall follow the bequest of a definite number of shares, this Court regards such decision as contrary to the majority rule. The opinion of Judge Love recognizes that intent of the testator as determined from the particular will, is controlling. In re Brann, 219 N. Y. 263; 114 N. E. 404; McGregory v. Gaskill, 296 S. W. 833; Hicks v. Kerr, 132 Md. 693; 104 Atlantic, 426, and Clegg v. Lippold are to the effect that in each case the ascertained intention of the testatrix is determinative.

It is suggested that defendants, Noreen Cottier and Harry Cottier, are first cousins of testatrix and are, therefore, entitled to a construction of the will favorable to their claim—Davis v. Davis, Exr., 62 Oh St 411—but this rule even if here applicable, cannot supply an intent which the Court finds here non-existent. At all events there is to be balanced against such considerations testatrix's expressed interest in two orphanages which are the beneficiaries of the trust created out of her residual estate. The residuary clause (Item V) is for the benefit of the Cleveland Protestant Orphan Home and the St. Joseph Orphan Home. Testatrix's language in this Item expresses the desire to furnish "pleasures to the children of these homes, such as books, games, * * * which are not usually available * * *." She adds: "I have always had a liberal sympathy for children who are deprived of the care of parents and this thought is my inspiration in making this bequest."

Coming now to The Union Trust Company stock, it seems to the

Court that whatever procedure was adopted by means of which the testatrix acquired her shares in The Union Bank of Commerce stock, there was an ademption so far as The Union Trust Company stock was concerned—this for the reason of the fact that she paid a double liability assessment on such stock. It would be as though testatrix had disposed of her Union Trust Company stock, although it cost her money to do so, and with such rights as she did receive in the transaction, acquired stock in a new and distinct corporate entity. The facts fail to disclose any continuity by reorganization or otherwise of the corporate existence of The Union Trust Company.

The rule with respect to ademption is as follows:

"Where the subject of a specific bequest has been extinguished in the lifetime of a testator, such bequest is adeemed, and the designated beneficiary thereof is wholly deprived of it or any property in lieu of it in absence of a contrary intention in the will." **Bool, Exr. v. Bool, 165 Oh St 262.**

An order may be drawn in accordance with the foregoing, with appropriate exceptions.