MARY BROWN *v*. SCHAFFER, EXECUTOR OF ESTATE OF
GUY BROWN ET AL.

[No. 968A148. Filed November 5, 1969. Rehearing denied December 5, 1969. Transfer denied March 16, 1970.]

*H. Earl Capehart, Jr., David F. Rees, Kreig, Devault, Alexander & Capehart,* of counsel, all of Indianapolis, for appellant.

*James Young, Young and Vandivier,* of Franklin, for appellees.

COOPER, J.—This matter comes to us from the Superior Court of Johnson County, wherein Preston Schaffer, Executor of the Last Will and Testament of Guy Brown, deceased, filed his Petition for Construction of said last will and testament. The appellant Mary Brown filed her reply in compliance with Rule 1-3 of the Supreme Court of Indiana, admitting and denying the allegations of the petition. The cause thus being at issue, it was submitted to the Court on stipulated facts and oral testimony. Thereafter judgment was rendered in favor of the appellees herein upon said petition.

Subsequently, Mary Brown filed her motion for a new trial alleging therein that the decision of the Court was not sustained by sufficient evidence and that the decision was contrary to law. The motion for new trial was overruled and this appeal followed.

The record reveals that Guy Brown died testate on May 12, 1967, being at the time of his death, ninety four (94) years of age, and domiciled in Johnson County, Indiana. His Last Will and Testament which had been executed on October 8, 1964, was admitted to probate in the Superior Court of Johnson County on May 23, 1967. The appellee Preston Schaffer was appointed as the Executor of the decedent's estate, is now, and has been at all times since his appointment, acting as such Executor.

At his death, the testator left surviving him as his sole and only heirs at law, and the persons who would have inherited

the whole of his estate had he died intestate, a sister, Mrs. J. C. Sipe, a nephew, Charles Brown, and a niece, Dorothy McGowan, all of Indianapolis, Indiana. Mary Brown, the appellant herein and the person named as the legatee in Item IV of the testator's will, was the sister-in-law of the testator, being the widow of Thad C. Brown, a deceased brother of the testator.

The appellees Preston Schaffer, Tom Schaffer, and William Schaffer were friends of the testator but were not related to him. Robert Schaffer, a beneficiary named in Item V of said will, was also a friend, but of no relation to the testator.

The Last Will and Testament of the testator herein, Guy Brown, omitting the formal parts, reads as follows:

"I, Guy Brown, of the Town of Edinburg, Johnson County, State of Indiana, being of sound and disposing mind and memory do hereby make, publish and declare this instrument to be my last will and testament revoking any and all wills by me at any time heretofore made.

### "ITEM I.

"I direct my Executor hereinafter named to pay all of my just debts out of the first monies coming into his hands as such.

### "ITEM II.

"I hereby give and bequeath unto my sister, Mrs. J. C. Sipe, Grandview Drive, Indianapolis, Indiana, all time deposits that I may have at my death in the Edinburg State Bank, Edinburg, Indiana.

### "ITEM III.

"I hereby give and bequeath unto Charles Brown and Dorothy McGowan, both of Indianapolis, Indiana, the children of my deceased brother, Thad C. Brown, the balance of all checking accounts which exist at the time of my death in the Edinburg State Bank, Edinburg, Indiana, and Irwin Union Bank and Trust Company, Columbus, Indiana.

### "ITEM IV.

"I hereby give, devise and bequeath unto Mary Brown, my sister-in-law, and the wife of my deceased brother, Thad

C. Brown, all of my right, title and interest in and to the estate of Harold C. Brown, my deceased brother, formerly of Leesburg, Indiana.

## "ITEM V.

"I hereby give, devise and bequeath to Robert Schaffer of Indianapolis, Indiana, all of my right, title and interest in and to the balance of a certain contract of sale for the real property located at Highland Place and 25th Street in the City of Indianapolis, Marion County, Indiana, together with any interest I may have in said real property at the time of my death.

## "ITEM VI.

"I hereby give, devise and bequeath unto Preston Schaffer, Edinburg, Johnson County, Indiana, the real property known as 402 East Thompson Street, Edinburg, Indiana, more particularly described as follows:

'Lot number eleven (11) in Kyle's First Addition to the Town of Edinburg, Indiana.

the same to be his absolutely and in fee simple forever.

## "ITEM VII.

"All the rest, residue and remainder of my estate, both real and personal of every kind and character, and wherever the same may be situate, I hereby give, devise and bequeath unto Tom Schaffer and William Schaffer, of the Town of Edinburg, Johnson County, Indiana, equally, share and share alike, absolutely and in fee simple forever.

## "ITEM VIII.

"I hereby nominate, constitute and appoint Preston Schaffer as the Executor of this, my last will and testament.

"IN WITNESS WHEREOF, I have hereunto subscribed my name at Franklin, Indiana, this 8th day of October, 1964.

s/ Guy Brown

Guy Brown."

The Petition for Construction of Last Will and Testament filed by the Executor, Preston Schaffer, omitting caption and signature, is as follows:

"Preston Schaffer as Executor of the Last Will and Testament of Guy Brown, deceased, respectfully petitions the court as follows:

"(1) That he is the duly appointed, qualified and acting executor of the last will and testament of Guy Brown, deceased.

"(2) That the last will and testament of decedent was dated October 8, 1964, and has been admitted to probate.

"(3) That Item IV of said Will reads as follows:
'Item IV. I hereby give, devise, and bequeath unto Mary Brown, my sister-in-law and the wife of my deceased brother, Thad C. Brown, all of my right, title and interest in and to the estate of Harold C. Brown, my deceased brother, formerly of Leesburg, Indiana.'

"(4) That Item VII of said Will reads as follows:
'Item VII. All the rest, residue and remainder of my estate, both real and personal of every kind and character, and wherever the same may be situate, I hereby give, devise and bequeath unto Tom Schaffer and William Schaffer of the Town of Edinburgh, Johnson County, Indiana, equally, share and share alike, absolutely and in fee simple forever.'

"(5) That the said Harold C. Brown predeceased the Testator herein and that administration was had upon his estate in the Kosciusko Circuit Court, Kosciusko County, Indiana, with the Executor therein filing his final report to the court on June 24, 1965, which report was subsequently accepted by the court, the Executor discharged and the said Estate closed, all prior to the death of Guy Brown, your testator herein.

"(6) That your testator, Guy Brown, was a distributee of the Estate of Harold C. Brown, and had received all of his distributive interest in and to the said estate prior to his death, converting same into assets of his own.

"(7) That an issue of construction has arisen with reference to Items IV and VII in that your Executor must determine whether the specific bequest set out in Item IV in favor of Mary Brown had lapsed, failed by reason of ademption or was void, at the date of death of your testator.

"(8) That in order to administer said estate and properly determine the interest of the various named devisees and legatees, in the Items above recited, it is necessary that this court make a construction of such items and a determination of the issues created thereby.

"(9) That the following persons named in such items are residents of the State of Indiana:

"Mary Brown, Tom Schaffer and William Schaffer.

"WHEREFORE, your executor prays that upon such notice as the Court may direct, and upon such hearing as the Court may require, the Court construe Items IV and VII of the last will and testament of Guy Brown, deceased, and for all other relief property (sic) in the premises."

Since the decision in this case will be based in part upon the evidence submitted at the hearing before the trial court, we are setting out the stipulations in full, a summary of appellees' Exhibit number 1, and a summary of the testimony of James B. Young. The written stipulations, omitting formal parts, are as follows:

"1. There is before this Court for adjudication a Petition For Construction of Last Will and Testament of decedent herein filed by Preston Schaffer, Executor of the Estate of Guy Brown, deceased, on December 20, 1967. Due notice of the hearing set for 1:15 p.m. on January 12, 1968, has been given the interested parties; namely, Mary Brown and William Schaffer and Tom Schaffer, all residents of the State of Indiana.

"2. Mary Brown, respondent herein, is the person named as legatee in Item IV of decedent's will and is the sister-in-law of the decedent, being the wife of Thad C. Brown, deceased, a brother of the decedent.

"3. Tom Schaffer and William Schaffer, respondents herein, are the persons named in Item VII of decedent's Will as residuary legatees.

"4. Harold C. Brown, brother of the decedent, predeceased the decedent. Administration of the Estate of Harold C. Brown was had in the Kosciusko Circuit Court, Warsaw, Indiana, and the final report in such estate was filed June 24, 1965, subsequently accepted by the said Court and the estate closed prior to the death of decedent on the 12th day of May, 1967. The decedent was a beneficiary of the Will of Harold C. Brown, deceased.

"5. The decedent received from the executrix of the estate of Harold C. Brown, the sum of $5,000.00 by check dated November 26, 1963, as a specific bequest; the decedent deposited such check to his account at The Edinburg State Bank, Edinburg, Indiana, on November 29, 1963, and on the

11th day of January, 1964, by check drawn on such account decedent purchased from The Edinburg State Bank Certificate of Deposit No. 51 in the amount of $3,000.00, said certificate being inventoried in this estate.

"6. The decedent received from the executrix of the estate of Harold C. Brown the sum of $3,000.00 by check dated June 30, 1964, as a partial distribution of the residue; the decedent deposited such check to his account at The Edinburg State Bank, Edinburg, Indiana, on July 3, 1964, and on the 9th day of July, 1964, by check drawn on such account decedent purchased from The Edinburg State Bank Certificate of Deposit No. 114 in the amount of $3,000.00, said Certificate being inventoried in this Estate.

"7. The decedent received from the executrix of the estate of Harold C. Brown the sum of $10,136.96 by check dated September 4, 1965, as a final distribution of the residue; the decedent deposited such check to his account at Irwin Union Bank and Trust Company, Columbus, Indiana, on September 11, 1965, and on the 11th day of September by check drawn on such account the decedent purchased from Irwin Union Bank and Trust Company Certificate of Deposit No. 11272 in the amount of $10,000, said Certificate being inventoried in this Estate.

"8. In each of the instances recited in paragraphs 5, 6, and 7 above the credit balances maintained by the decedent in his said bank accounts subsequent to the respective deposits referred to in said paragraphs was in excess of the respective deposits from the estate of Harold C. Brown up to and including the date on which decedent converted funds deposited into the respective certificates of deposit described above. In addition, withdrawals, if any, made by decedent subsequent to the deposit of checks as aforesaid from the estate of Harold C. Brown were not in excess of the amounts on deposit in such respective accounts prior to the deposits of funds from said estate.

"9. This Stipulation shall not in any way limit the Court to such facts of which it may take judicial notice nor to such facts as may be admitted into evidence at the hearing hereon. (Tr. pp. 50, 51, and 52, ll. 9-26, 1-27, and 1-11, respectively)."

Appellees' Exhibit number 1, consists of copies of the ledger sheets of the Edinburg State Bank, Edinburg, Indiana, showing the deposits and withdrawals made by the testator Guy Brown, in his account with said Bank during the period

involved in this case. Said Exhibit confirms the facts set forth in paragraphs 5 and 6 in the parties' agreed stipulation of facts.

James B. Young testified in substance as follows:

That he was a lawyer and had practiced his profession in the City of Franklin, Johnson County, Indiana, since December 26, 1955. He knew the testator, Guy Brown, as an employee of Schaffer's Drug Store in Edinburg, Indiana, and as a client. He had drafted wills for clients and estimated that probate work represented about one-third of his practice. Guy Brown came to his office about two or three weeks before October 8, 1964, and consulted with him about the making of his will. Young prepared a rough draft of the will and Mr. Brown came in and looked it over. Young then prepared the will in final form, Mr. Brown came back and executed it on October 8, 1964. Mr. Brown discussed with him the value and extent of his property. He also mentioned his relatives and heirs that would inherit his property in the event he left no will. He mentioned Bob, Preston, Bill and Tom Schaffer. They were friends of his, but were not related to him. He mentioned that he had a brother who had recently died and whose estate was presently being administered in Kosciusko Circuit Court, Kosciusko County, Indiana, and that he was due to receive some additional funds from said estate upon final settlement. He told Young how he wished to dispose of his entire estate. He wished to give to his sister, Mrs. J. C. Sipe, his nephew, Charles Brown, his niece, Dorothy McGowan and the Schaffers the property bequeathed to them in the will. Concerning the appellant, Mary Brown, the widow of his deceased brother, Thad C. Brown, "He instructed me to prepare an item in his will which would have left that interest which would be that interest (in the estate of his late brother Harold C. Brown) to Mary Brown a sister-in-law. And I did so by drafting Item IV" in said will. Young is counsel

for the Executor, Preston Schaffer, and has represented him as such in all matters relating to the estate to date. He was an attesting witness to the testator's will. He also caused the Executor to prepare and file the petition for construction of the will.

All of the proceeds due the testator Guy Brown, from the estate of his deceased brother, Harold C. Brown, and bequeathed to Mary Brown by Item IV of the testator's last will and testament, were paid to and received by the testator during his lifetime, both before and after the execution of his will. The gross appraised value of the testator's estate was $27,352.16 of which $20,852.16 was personal property and $6,500.00 was real estate.

The issue presented by this appeal is the construction to be placed on Item IV of the Last Will and Testament of Guy Brown wherein he bequeathed and devised to Mary Brown, all of his right, title and interest in and to the estate of Harold C. Brown, his deceased brother, whose estate at the time of the execution of the testator's will, was being administered in the Kosciusko Circuit Court, Kosciusko County, Indiana.

The appellees contend that the bequest or devise in Item IV of the testator's Last Will and Testament, bequeathing and devising all his right, title and interest in and to the estate of his deceased brother, Harold C. Brown, to his sister-in-law, Mary Brown, was a specific bequest as distinguished from a general or demonstrative bequest, and since the testator had received all the money due him from his brother's estate during his lifetime, there was an ademption of the legacy to Mary Brown. The essence of the appellees' contention is that the mere occurrence of the receipt by Guy Brown, during his lifetime, of all the money due him from the estate of his deceased brother, independent of all other facts unattended by any other circumstance, constituted an ademption, *ipso facto,* of the bequest to Mary Brown. The appellees contend that as a result of such ademption, Mary Brown is not entitled to

receive any part of the testator's estate, and that all of the money the testator received from the estate of his deceased brother automatically became a part of the residue of the testator's estate which goes to the appellees as the residuary legatees of his estate, as directed in the testator's will. The trial court agreed with the appellees' contention and rendered judgment in favor of the appellees.

The appellant Mary Brown, on her behalf, contends that there was no ademption of the legacy bequeathed to her in Item IV of the testator's will.

She contends that the receipt by the testator during his lifetime of all the money due him from the estate of his deceased brother did not, *ipso facto,* constitute an ademption of the bequest to her. That there is no ademption where, as in this case, the subject matter of a specific bequest has not been destroyed, alienated or extinguished, but merely changed in form, from a money interest in the estate of a deceased brother, to Bank Certificates, which Bank Certificates were preserved intact by the testator during the remainder of his lifetime, and were a part of his estate at the time of his death.

The appellant further contends that the question of whether there had been an ademption of the specific legacy to her depends upon the intention of the testator as shown by the will itself, the attitude or conduct of the testator toward the subject matter of the legacy after it came into his possession, all the other relative and attending circumstances connected with the transaction, and that the action of the testator in purchasing Bank Certificates upon the receipt of the proceeds from his brother's estate with practically all of such proceeds, and preserving the certificates intact during the remainder of his life, leaving them as a part of his estate at the time of his death, shows conclusively that the testator did not intend an ademption of the legacy bequeathed to her in Item IV of his will. The appellant contends, therefore, that she is entitled to all of the money that the testator received from the estate of his deceased brother.

In considering the questions involved in the construction of Item IV of the will, we must keep in mind the following fundamental and well established rules of law applicable to the construction of wills:

1. The cardinal rule and in fact the sole purpose of the court in construing a will is to ascertain the intention of the testator.

2. The intention of the testator is to be determined from a full and complete consideration of the will as a whole or entire instrument, and from all of the facts and circumstances surrounding the testator at the time the will was executed or occurring after such execution.

3. Once the intention of the testator has been determined, all other rules of law must bend to such intent, and the courts will give full force and effect to such intent so long as it does not violate some positive rule of law. See: Vol. 29, I.L.E., Wills, Secs. 173 and 175, pp. 321-326; *Osburn, Admr., etc. et al.* v. *Murphy et al.* (1963), 135 Ind. App. 291, 193 N. E. 2d 669, 672; *Peirce* v. *Farmers State Bank of Valparaiso et al.* (1943), 222 Ind. 116, 121, 51 N. E. 2d 480; *Ridgeway et al.* v. *Lanphear et al.* (1885), 99 Ind. 251, 252; Acts, 1953, Ch. 112, Sec. 601 (i), the same being Burns' Ind. Stat. Anno. (1953 Repl.) Sec. 6-601 (i); *In re Duvall's Will* (1955), 125 Ind. App. 646, 129 N. E. 2d 377; *St. Mary's Hospital of Evansville* v. *Long et al.* (1938), 215 Ind. 1, 17 N. E. 2d 833.

The parties to this appeal have raised the question of the class or sort of the legacy contained in Item IV. Legacies are divided into three separate and distinct classes, namely, General, Demonstrative and Specific.

A *General Legacy*, as the name implies, is a bequest payable out of the general assets of the testator's estate, such as a gift of money or other thing in quantity and not in any way separated or distinguished from other things of the same kind.

A *Demonstrative Legacy* is a gift of a sum of money with the direction that it shall be paid out of a designated fund, or charging specified property with its payment. It partakes of the nature of both general and specific legacies; it is specific in that a fund primarily charged with its payment is specifically described and pointed out; it is general in that the whole estate is liable for its payment. In the event the primary fund charged with its payment is at the time of the testator's death, insufficient to pay the legacy in full, or has been completely extinguished, the legacy does not fail. It is simply treated as a general legacy and paid out of the testator's general estate.

A *Specific Legacy,* as the name implies, is a bequest of some definite or specific part of the testator's estate which is capable of being designated, identified and distinguished from other like things composing the testator's estate. It may consist of money if it is designated with sufficient certainty. Vol. 29, I.L.E., Wills, Sec. 382, pp. 515, 516, 517; Vol. 2, Henry's Probate Law and Practice (6th ed.), pp. 1221-1224; *Walters* v. *Selleck, Admr.* (1929), 201 Ind. 593, 597, 598, 170 N. E. 20.

Whether a legacy is to be treated as Demonstrative or Specific is a question of the intention of the testator and is not governed by any arbitrary rules. *Waters* v. *Selleck (supra);* Henry's Probate *(supra),* Vol. 2, p. 1224.

By Item IV of the will herein, the testator bequeathed to his sister-inlaw, Mary Brown, all of the testator's "right, title and interest in and to the estate of Harold C. Brown," his deceased brother. This is a gift of a specific asset owned by the testator and capable of being identified and distinguished from all other property in his estate. By all of the authorities this is a specific and not a demonstrative legacy, as we so hold. Rood on Wills, 2nd Ed., Secs. 705, 706, 707; *Waters* v. *Selleck, Admr. (supra); Kenaday* v. *Sinnott* (1900), 179 U. S. 606, 45 L. Ed. 339. Having decided that the legacy contained in Item IV of the testator's will is a Specific

Legacy, we now come to the vital question of whether that legacy adeemed.

There are innumerable decisions seeking to define the doctrine of ademption, none of which is wholly satisfactory, and none of which has become uniformly adopted by the courts. Some of the definitions of ademption are statutory, but the majority of the definitions are found in the case law. Strictly speaking, the doctrine of ademption applies only to specific legacies and not to legacies which are general or demonstrative.

The definition of ademption most generally accepted by the courts, in substance, is the one set out in 96 C.J.S., Wills, Sec. 1172, p. 985, which read as follows:

" 'Ademption' is the term used to describe the act . . . by which a specific legacy has become inoperative because of the withdrawal or disappearance of its subject matter from the testator's estate in his lifetime."

See also: Words and Phrases, Vol. 2, perm. ed., p. 532, and cases cited.

When the ademption of a specific legacy occurs, the specific legacy is completely voided. The beneficiary of the specific legacy cannot look to the general assets of the estate for payment. The legacy is wholly lost and the legatee is not entitled to anything out of the estate in its place. Rood on Wills, 2nd Ed., Sec. 711, p. 677; 96 C.J.S., Wills Sec. 1179, p. 1015; *Bool* v. *Bool* (1956), 165 Ohio St. 263, 135 N. E. 2d 372, 61 A.L.R. 2d 440; *Central National Bank of Cleveland* v. *Cottier et al.* (1958), 82 O.L.A. 301, 163 N. E. 2d 709.

The doctrine of ademption is of ancient origin. It was an established principle of law under the Justinian Code of Rome, and early became a part of the common law of England. Literally hundreds of cases concerning the subject in one phase or another have been decided by the courts. The early cases are so contradictory in their reasoning and so divergent in

their views, that it is impossible to reconcile or harmonize them. This doctrine of our law has undergone a changing, hectic evolution. 25 Iowa Law Review, 290; Page on Wills, Vol. 6, Sec. 54.1.

In more recent times, the cases have become fairly well stabilized and we believe that the consensus of the modern decisions can be summarized as follows:

1. The courts look with disfavor upon the ademption of a specific legacy and will not approve of such an ademption unless the facts and circumstances of the particular case unmistakingly demand such a result.

2. It is only when the subject matter of the specific legacy has been completely destroyed, alienated or extinguished, or so changed in character that it cannot be recognized or identified, that the legacy will be adeemed. But where the subject matter of the specific legacy has not been completely destroyed, alienated or extinguished, but merely changed in form, shape or location, by accident, operation of law, or some act of the testator, and such subject matter in its changed or altered form can be traced into the possession of the testator, and is a part of his estate at the time of his death, and the attitude of the testator toward such altered property has been such as to indicate no change in his testamentary intent, there is no ademption and the legatee will take such property in its altered form.

3. In construing a will to determine whether there has been an ademption of a specific legacy, the intention of the testator is the controlling factor, the same as in the construction of all wills. Once the intention of the testator has been determined, all other rules of law pertaining to ademption must bend to such intent, so long as his intent does not violate some positive rule of law.

We have selected from the many cases and authorities on the subject of ademption, the following, which, in our opinion,

support the above statements in all respects as the consensus of the present law on the subject. *Gist et al.* v. *Craig et al.* (1927), 142 S. C. 407, 141 S. E. 26; *Rue* v. *Connell et al.* (1908), 148 N. C. 302, 62 S. E. 307; *King* v. *Sellers* (1927), 194 N. C. 533, 140 S. E. 91; *In re Bradley's Will* (1901), 72 Vt. 253, 50 A. 1072; *Pendergast* v. *Walsh et al.* (1899), 58 N. J. Eq. 461, 42 Atl. 1049; *In re Armour's Estate* (1952), 11 N. J. 257, 86 A. 2d 454, 94 A. 2d 286; *Gray et al.* v. *McCausland et al.* (1943), 314 Mass. 743, 51 N. E. 2d 441; *Speyers et al.* v. *Manchester* (1945), 131 Conn. 598, 41 A. 2d 783; *In re Moore's Estate* (1955), 135 Ca. 2d 122, 286 P. 2d 939; *Kenaday* v. *Sinnott* (1900), 179 U. S. 606, 45 L. Ed 339; *In re Cooper's Estate* (1923), 95 N. J. Eq. 210, 123 A. 45; *Donath et al.* v. *Shaw et al.* (1942), 132 N. J. Eq. 545, 29 A. 2d 555; *Goode* v. *Reynolds* (1925), 208 Ky. 441, 271 S. W. 600; *Warren* v. *Shoemaker* (1965), 207 N. E. 2d 419 (Ohio); *In re Estate of Hall* (1960), 60 N. J. Super. 597, 160 A. 2d 49; *In re Bliss' Estate* (1962), 232 Ore. 26, 374 P. 2d 383; *Seifert et al.* v. *Kepner* (1962), 227 Md. 517, 177 A. 2d 859; *In re Mandelle's Estate* (1930), 252 Mich. 375, 233 N. W. 230; *In re Gerlach's Estate* (1950), 364 Pa. 207, 72 A. 2d 271; *Rasor* v. *Rasor et al.* (1934), 173 S. C. 365, 175 S. E. 545; *Pridemore's Exec.* v. *Bailey* (1957), 300 S. W. 2d 559 (Ky.); *Day* v. *Brooks* (1967), 10 Ohio Misc. 273, 224 N. E. 2d 557; *Creed* v. *Knoll* (1967), 63 Calif. Repr. 80; *In re Holmes' Estate* (1965), 233 Cal. App. 2d 464, 43 Cal. Repts. 693; *In re MacDonald's Estate* (1955), 133 C. A. 43, 283 P. 2d 271; *In re Mason's Estate* (1965), 42 Cal. Reptr. 13.

In the case of *Gist* v. *Craig*, 142 S. C. 407, 141 S. E. 26, the testatrix, Mrs. Rice, directed that all the rest and residue of her estate, real and mixed, be converted into money after her death, and that all monies collected from said sales be paid to the Epworth Orphanage at Columbia, South Carolina. After she executed her will, two notes secured by mortgages became due, one for $5,693.35, and one for $2,076.40, and said amounts were paid to and received by the testatrix dur-

ing her lifetime. She later secured two "time deposits" issued by the Bank of Carlile in the amounts set out above, with the money she had received in payment of said notes. These Bank Certificates were in her estate intact at the time of her death. The court held the bequest to be a specific bequest. The appellant contended that the collection by the testatrix during her lifetime of the money from the notes secured by the mortgages was a destruction, or extinction, of the subject matter of the legacy and constituted an automatic, *ipso facto* ademption of that part of the residue of the estate bequeathed to the orphanage. The court denied that contention and held that the money received from the notes and mortgages was, without dispute, directly traceable into the Bank Certificates and that such Certificates were in the testatrix's estate at the ime of her death and that the subject matter of the bequest was not destroyed, but only changed as to form and that there was no ademption. The Epworth Orphanage was awarded the total amount of said Bank Certificates.

In the case of *King* v. *Sellers*, 194 N. C. 533, 140 S. E. 91, Samuel Blossom bequeathed to his daughter, Mary King, a mortgage in the amount of $4,000.00 (a specific legacy) executed by one H. H. Hall. Blossom's attorney handled all transactions for the testator. After Blossom executed his will and before his death, the mortgage became due, and was paid in full to his attorney by check. The attorney deposited the check in his own account and later purchased from the Peoples Savings Bank a Certificate of Deposit payable to himself. Nine days thereafter, Blossom loaned to George L. Peschan $3,500.00 secured by a note and mortgage. On the same day, Blossom's attorney cashed the Certificate of Deposit, and gave Peschan $3,500.00 out of the proceeds received from said Bank Certificate. Blossom, the testator, died in 1926, and the Peschan note and mortgage was a part of his estate at the time of his death. Mary King filed a complaint with the court demanding the Peschan note and mortgage by virtue of the specific bequest to her of the original mort-

gage in the testator's will. Sellers, the appellee as Executor of the testator's estate, demurred to the complaint, contending that the payment of the first mortgage of Hall to the testator and the receipt thereof by the testator during his lifetime of the proceeds constituted, *ipso facto,* an ademption of the legacy to her. The trial court agreed with the Executor, and sustained the demurrer. On appeal, the Supreme Court reversed the trial court. It approved and applied the "Testator's Intention Theory" and held that there was no ademption. The Court said, in substance, that the subject matter of the legacy was not destroyed, but was preserved in the new note and mortgage; that the corpus or thing itself was not changed and that a second or third collection and reinvestment in other securities would not change or alter the subject matter except in form; that it is the identical form of the investment that existed at the time the legacy was created, namely, a note secured by a mortgage.

In the case of *Re Bradley's Will,* 72 Vt. 253, 50 A. 1072, Anna S. Bradley, the testatrix, was the widow of Captain Charles O. Bradley, deceased. In the Captain's will, he left all of his property to his widow. In her will, she bequeathed all of the money and bonds that she received from the Captain to his three nieces in equal shares. There were no bonds in his estate at the time of his death, but the testatrix, out of the money received by her from his insurance policies payable to her, purchased two bonds; one for $5,000.00, and one for $1,300.00. She owned both bonds at the time she executed her will. During her lifetime, the $1,300.00 bond became due and was paid to her in full. She deposited the exact sum so received in the White River Savings Bank in her name and it was there intact at the time of her death. The appellants. heirs of the testatrix and the residuary legatees under her will, contended that the two bonds were never the property of Captain Bradley; that since the insurance policies were made payable to the testratrix upon his death, the $1,300.00 bond was adeemed upon its payment and receipt by the testa-

trix, and there was nothing in the Captain's estate upon which the will could operate. The court rejected their contention and applied the intention theory, and stated "That the testatrix did not intend to adeem the $1,300.00 bond is shown by the fact that when it was paid the amount received for it was deposited in a saving bank, where it was found at her decease to respond to the bequest." The manifest intention of the testatrix, said the Court, was that her money and bonds on hand which she acquired through her husband were to go to his nieces. The bonds were awarded to the Captain's nieces.

In *Creed* v. *Knoll*, 63 Calif. Rep. 80, decided in 1967, Y. L. Creed married Flossie Creed in 1919. They had one child, Betty Creed, who married Melvin Knoll, and the Knolls had born to them four children. Creed was a contractor, and in addition to considerable personal property, owned a commercial development project, known as the "Bell Property," valued at aprpoximately $230,000.00. Flossie Creed died in 1942, and Creed married Pauline Creed as his second wife. Creed thereafter made a will and devised the "Bell Property" to his daughter Betty Knoll in trust for his grandchildren. After being informed of the will and its contents, the Knolls became concerned about the matter of the estate and inheritance taxes that could result as a consequence of such a devise. After consulting an attorney, they suggested to Mr. Creed that a corporation be formed to which the "Bell Property" be transferred, inter vivos, and the stock of the corporation be transferred to the grandchildren yearly in tax free, inter vivos gifts. The corporation was formed (Y. L. Creed Corporation) and 465 shares of its capital stock issued in escrow to Mr. Creed. Fifty Seven (57) shares thereof were transferred by him to the grandchildren in accordance with the tax plan before he died in December of 1964.

Pauline Creed did not know about the will until after the death of the testator. Although she received under the will a substantial share of the testator's estate, she contested the distribution of the "Bell Propery" to the grandchildren's

mother as testamentary trustee, upon the legal principle that the devise was specific and ademption had occurred by the inter vivos transfer of the "Bell Property" to the Y. L. Creed Corporation. As the residuary legatee, she claimed that the ademption threw the stock into the residue of the estate and she was entitled to 393 shares of such stock.

The trial court decided against her contention and she appealed to the Court of Appeals, alleging as error that there had been an ademption, and that the trial court erred in admitting extrinsic evidence, other than the will itself, to show the intention of the testator. The Court of Appeals affirmed the decision of the trial court. It held that whether a specific legacy adeemed depended upon the intention of the testator. It also held that the admission of extrinsic evidence was proper to show the intention of the testator. "It has long been recognized" said the court, "that even where the particular subject of the specific devise no longer exists as an asset in the testator's estate, the specific devise is not wholly extinguished if it is merely changed in form." (Citing California cases). "This doctrine has become firmly established and has been extended to apply to substantial changes of the form in which the property rests at the time of death." (Citing California cases.) "There is no question," said the Court, "That the testator intended specifically to devise the Bell Property to his daughter in trust for the benefit of his grandchildren." On the question of whether the *act itself* of changing the form of the subject matter of the specific legacy, standing alone and independent of all other facts and circumstances, automatically works an ademption of a specific legacy, the court said:

> "The rule of law in California, as the above cited cases reflect, is that a mere change of form of the property described as a specific bequest in the will does not ipso facto constitute an ademption."

Indiana does not have a general statute on the subject of ademption. There are a number of early Indiana cases deal-

ing with different phases of the doctrine of ademption, but many of them were based upon statutes which are no longer in existence, and none of the others that have been called to our attention deal with the specific subject involved in this case.

The only statute in Indiana touching upon the doctrine of ademption is Acts of 1953, Ch. 112, p. 295, the same being Sec. 8-144 Burns' 1953 Repl., which concerns guardianships of incompetents. It provides, in substance, that when a person makes a will which includes a specific bequest or devise, and such person later becomes incompetent and a guardian of his estate sells or disposes of such property, and the property is not in the ward's estate at the time of his death, that such specific legacy shall not be adeemed by such sale or other disposal, but the legatee or devisee shall have the option to take the value of the property at the time of the ward's death, or the proceeds thereof if the same can be traced or identified. This section is taken verbatim from the Model Probate Code (Sec. 231) upon which the Indiana Probate Code of 1953 is based. It supports the rule that courts look with disfavor upon the ademption of specific bequests.

The Model Probate Code comments upon this section as follows:

> "The Model Probate Code does not deal with this more general proposition (ademption) but proceeds upon the theory that the remedy for the unusual ademption situation lies in the greater liberality by the courts in holding that devises are general or demonstrative rather than specific."

Thus, the only expression of our legislature upon the subject of ademption supports the rule against arbitrary ademptions and supports the intent theory enunciated in the cases summarized above.

Having thus decided that the consensus of the decided cases is that the courts will attempt to determine the intent of the testator in deciding whether a bequest has adeemed, we now

proceed to apply this proposition to this case. The pertinent facts have heretofore been set out in the stipulation of facts, the summary of appellees' Exhibit number 1, and the summary of the testimony of James B. Young.

The appellees contend that the receipts by Guy Brown during his lifetime, of proceeds due him from the estate of his brother, Harold C. Brown, automatically adeemed the specific legacy bequeathed to Mary Brown. In support of this theory, the appellees have cited two cases from the State of California, namely, *In re Goodfellow's Estate* (1913), 166 Calif. 409, 137 P. 12, and *In re Babb's Estate* (1927), 200 Calif. 252, 252 P. 1039.

In both the *Goodfellow* and the *Babbs'* cases, the testator made bequests of their interests in the estates of others, which estates were in the process of administration at the time the testators made their wills. In both cases the testators received during their lifetimes the proceeds from those estates which they had previously made the subjects of bequests. In both cases, the courts decided the cases solely on the theory that the receipt of the proceeds from the estate of another during the testator's lifetime adeemed the specific legacy of those proceeds.

It is interesting to note that since the decisions in these two cases, both the *Goodfellow* and *Babbs'* cases have been overruled by the appellate courts of California in a number of recent cases, and the courts have adopted the modern rule that the intent of the testator is the controlling factor in determining the question of the ademption of a specific legacy.

In 96 C.J.S., Wills, Sec. 1117, at p. 998, we find the following:

"Thus, while the mere delivery to, or acceptance by, the testator, of money or property coming to him as his share in an estate, which share he has provided in his will is to go to another, is not of itself and without more an ademption of the latter's legacy, the items thus delivered and accepted being identically the same after as before the

delivery and acceptance, after the property thus collected is mingled by the testator with the general assets of his estate, so as to destroy its identity, the legacy is adeemed."

In this case, we cannot say that Guy Brown commingled the funds received from his deceased brothers' estate with his own general assets. The bank certificates which he purchased were directly traceable to the funds received from his brother's estate, and these certificates were held by him during the balance of his lifetime separate and apart from his general assets.

The mere change or alteration in the subject matter of the legacy in and of itself, whether resulting from the operation of law or from some act of the testator, will not automatically result in an ademption. We must look beyond the change or alteration to the intention of the testator as gathered from the will itself and all the other relevant facts and circumstances occurring between the execution of the will and the death of the testator. Thus, we find in 96 C.J.S. Wills, Sec. 1177, at page 999, the following:

". . . where the conduct relied on (the testator's conduct) is some change in its form or location, the property not having been altogether lost or extinguished as a separate and distinct item of his estate, the testator's intention is recognized as being of significance on the question of what the property was that was intended to go by the will and consequently whether the change has so affected the substance of the gift as to cause an ademption, since it is a question of intention, determined in light of rules of construction, what property forms the subject matter of a devise, . . . or legacy . . . Whether the form or location in which the property exists at the time of the will is merely descriptive or is so far linked with the essence of the gift that a change therein will work an ademption depends on such intention."

See also the following California cases: *Creed* v. *Knoll, supra; In re Mason's Estate, supra; In re Holmes' Estate, supra;* and *In re MacDonald's Estate, supra.* In the case of *In re MacDonald's Estate,* the court held that where the property has

been converted into a different form by operation of law, there is no ademption. In the *Creed* v. *Knoll* case, as pointed out above, the court said that the mere change of the form of the property bequeathed in a specific legacy does not, *ipso facto*, constitute an ademption. In the case of *In re Mason's Estate*, the court said: "A change in the form of property subject to a specific testamentary gift will not effect an ademption in the absence of proof that the testator intended that the gift fail."

See also the following cases from other states: *In re Coopers Estate* (1923), 95 N. J. Eq. 210, 123 Atl. 45; *In re Bradley's Will, supra; In re Frost's Estate* (1946), 354 Pa. 223, 47 A. 2d 219; *Stout* v. *Hart* (1801), 7 N. J. L. 495.

*Stout* v. *Hart, supra,* is said to be the first case on the doctrine of ademption decided in a court of the United States. Thomas Houghton in his will made the following bequest: "I give and bequeath to my nephew Jacob Stout all the money due on bond against Peter Phillips and John Phillips." Later, as an accommodation to the Phillips', the testator accepted a new bond in place of the old bond. Some payments were made to the testator on the bond. It was claimed that the surrendering of the old bond for the new bond, and the receipt of part payment thereof, constituted an ademption of the specific legacy to Jacob Stout. The Court held that there was no ademption and said:

> "When payment is tendered to the testator of a debt specifically beqeuathed, it is not a circumstance from which to infer an intention to adeem."
>
> "Plaintiff is entitled to a judgment for the sum bequeathed to him."

In the case of *In re Cooper, supra,* Henriette Cooper, in her will, bequeathed to her two sisters, Ann N. Cooper and Mary Jacoby, all of her distributive shares in the estate of her deceased great uncle, Levi Nice and her deceased great aunt, Ann Nice, whose estates were being administerd in court at the time said Henriette Cooper executed her will. She

later became insane, and all proceeds due her from both estates were paid to her guardian while she was still alive. The court held that one's interest in the estate of a deceased person could be the subject of a bequest or devise, and that the receipt of the proceeds due from such estates during her lifetime did not constitute an ademption.

No Indiana case has come to our attention involving the doctrine of ademption where there has been a change in the subject matter of the specific legacy, but not a complete alienation or destruction thereof. This Court however, in the case of *The New Albany Trust Co., Guardian et al.* v. *Powell, Exec. et al.* (1902), 29 Ind. App. 494, 64 N. E. 640, has ruled on the question of a partial alienation or destruction of such subject matter, and held that the doctrine of ademption by alienation operates *pro tanto* only; so where only a part of a legacy has been alienated, the remainder still passes to the legatee. It also held that the intention of the testator controls the construction of a will.

The appellees further contend that the receipt by Guy Brown during his lifetime of his interest in the estate of his brother adeemed the specific legacy of that interest to Mary Brown, because, they say, a will speaks from the date of death of the testator, and by reason of the fact that Guy Brown received those proceeds during his lifetime, there was nothing left in the estate of Harold C. Brown on which the will of Guy Brown could operate.

We cannot agree with this argument. It is, in our opinion, based upon the assumption of two false premises.

First, as we have heretofore decided, the legacy was not adeemed by the mere receipt by Guy Brown during his lifetime of the proceeds due to him from the estate of his deceased brother. Moreover, the legacy was not adeemed by Guy Brown's changing the form of those proceeds from cash to Bank Certificates, when those certificates were clearly traceable to those proceeds and were held by the testator during

the remainder of his lifetime separate and apart from his other assets.

Second, the statement that a "will speaks from the date of death of the testator" is correct as far as it goes. When we say a will speaks from the date of the death of the testator, we simply mean that a will operates upon all the property in the testator's estate at the time of his death, and is not restricted solely to that property he may have owned at the time he made his will. Vol. 29, I.L.E., Wills, Sec. 192, p. 350. It has no connection with the doctrine of ademption. It was formulated as a rule of law to cover property acquired by the testator after he made his will, and which was a part of his estate at the time of his death.

Therefore, the last will and testament of Guy Brown will operate upon all the property which was in his estate at the time of his death. At the time of his death, the subject matter of the legacy to Mary Brown was in his estate in the form of Bank Certificates. The mere shifting of the interest involved from the estate of Harold C. Brown to the estate of Guy Brown works no change in the legacy bequeathed to Mary Brown. *Pridemore's Exec.* v. *Bailey* (1957), Ky., 300 S. W. 2d 559; *In re Mandelle's Estate* (1930), 252 Mich. 375, 233 N. W. 230; *Nelson* v. *Minton,* 46 Ohio App. 39, 187 N. E. 576; *Cook* v. *Stevens et al.* (1926), 125 Me. 378, 134 A. 195; *In re Wick's Estate* (1936), 120 N. J. Eq. 468, 185 A. 527; *Lydick* v. *Tate* (1942), 380 Ill. 616, 44 N. E. 2d 583; 95 C.J.S. Sec. 629, p. 891; *In re Burr's Estate,* 24 N. Y. S. 2d 940; *New Albany Trust Co.* v. *Powell, supra; In re MacDonald's Estate, supra;* 96 C. J. S. Sec. 1125, (d) Wills; *Willis* v. *Barrow* (1929), 218 Ala. 549, 119 So. 678.

For the purpose of ascertaining the effect and operation of the will upon all of the property in the testator's estate, the will speaks from the date of the death of the testator. But for the purpose of ascertaining the intention of the testator relative to the meaning and effect of the

bequests and devises contained in the will, it must of necessity speak from the date of its execution. (Same authorities as above.)

In the matter of construing wills, our Supreme Court in the case of *Brown* v. *Union Trust Co.* (1951), 229 Ind. 404, at page 411, 98 N. E. 2d 901, at page 904, has stated:

> "If the words used in a will are not ambiguous and clearly express the intention of the testator, they must govern. That which is plain and manifest needs no interpretation. *Ross* v. *Clore* (1948), 225 Ind. 597, 599, 76 N. E. 2d 839; *Jenkins* v. *King* (1946), 224 Ind. 164, 170, 171, 174, 65 N. E. 2d 121. A will expressed in clear and precise terms, manifesting the testator's intention and leading to nothing absurd, presents no reason for refusing the intention which it naturally presents to the mind. *Coon* v. *Coon* (1918), 187 Ind. 478, 484, 118 N. E. 820. See *Garrigus* v. *Board of Commissionesr of Parke Co.* (1872), 39 Ind. 66, 70."

In the case of *Curry* v. *Curry* (1914), 58 Ind. App. 567, at page 576, 105 N. E. 951 at page 955, this Court said:

> "The intent of the testator is recognized by all the authorities as being the polar star to which the courts must always look in construing a will. *Laisure* v. *Richards* (1914), 56 Ind. App. 301, 103 N. E. 679; *Pate* v. *Bushong* (1903), 161 Ind. 533, 537, 69 N. E. 291, 100 Am. St. 287, 63 L.R.A. 593; *Fenstermaker* v. *Holman, supra; Moore* v. *Gary* (1897), 149 Ind. 51, 57, 48 N. E. 630; *Calvin* v. *Springer* (1902), 28 Ind. App. 443, 446, 63 N. E. 40; *Smith* v. *Meiser, supra.* In ascertaining this intent, the court should consider the will in its entirety and if possible give effect to every item and word thereof."

See also: *Skinner* v. *Spann* (1911), 175 Ind. 672, 684, 93 N. E. 1061, 95 N. E. 243; *Garrison* v. *Day* (1905), 36 Ind. App. 543, 548, 76 N. E. 188; *Heasman* v. *Pearse* (1871), 7 L.R. Ch. 275, 283; Gray, Rule against Perpetuities (3rd ed.) §§ 629, 630, 631, 633; *Ridgeway* v. *Lanphear* (1885), 99 Ind. 251, 257.

Applying the above rules to the matter now before us, it is our opinion that the last will and testament of Guy Brown,

when viewed in its entirety, reveals a well thought out plan on the part of the testator for the distribution of his property to his relatives and friends in accordance with what he believed to be their needs and deserts at his hands. He gave to his sister-in-law, Mary Brown, the largest bequest. It is wholly inconsistent and illogical to contend that the testator ever intended that his bequest to Mary Brown, his most favored beneficiary, would be voided in the event that he received all the proceeds due him from his deceased brother's estate during his lifetime, and that because of such an occurrence she would receive nothing from his estate. The real intent of the testator, as shown by all the facts and evidence in the case is perfectly clear. The uncertainty in the matter arises because Item IV of the will should have been set forth in language more definite and complete which would have accurately stated that intent.

Nonetheless, it is our opinion that when the language of Item IV is considered in connection with all the other facts and circumstances in the case, it is sufficient to show beyond question that it was the intention of the testator to give by his will to Mary Brown, all of the proceeds which he received from from the estate of his deceased brother, Harold C. Brown, whether such proceeds were received by him before or after the execution of his will, and whether the proceeds were rceived by him during his lifetime or by his estate after his death, and we so hold.

As a result, Mary Brown is entitled to have distributed to her the proceeds directly traceable to the distributions from the estate of Harold C. Brown, namely, the three Bank Certificates purchased by the testator with the money he received from his deceased brother's estate in the respective amounts of $3,000.00, $3,000.00, and $10,000.00, totalling in value $16,0000.00. In the event said Bank Certificates are not available for distribution to her in kind, she is entitled to receive the sum of $16,000.00 in cash out of said estate.

Mary Brown is not, however, entitled to receive the difference between the actual amounts the testator received from his deceased brother's estate and the amount invested by him in said Bank Certificates, because such differences are not directly traceable, but were lost in the testator's general estate and became a part of the residue of his estate.

Neither is Mary Brown entitled to receive any part of the income received from the property in the estate, since Burns' Indiana Statutes, Sec. 7-1107, 1953 Rev. Ed., provides that unless the will provides otherwise, all income received during the administration of the estate shall become a part of the corpus of the estate. The will herein does not provide otherwise.

For all of the above and foregoing reasons, the judgment of the trial court is reversed, and the Court is ordered to enter judgment in accordance with this opinion. Costs vs. appellees.

Lowdermilk, P.J., Carson and Sullivan, JJ., concur.

NOTE.—Reported in 252 N. E. 2d 142.