D. H. STARBUCK Ex'r, et al. v. T. C. STARBUCK et al.

*Wills, Construction of—Ademption—Legacies.*

1. A specific legacy is a bequest of personal property so designated and identified, that that particular thing, and no other in its stead, can pass to the legatee.

2. A specific legacy is *adeemed,* when in the lifetime of the testator, the property bequeathed is lost, destroyed, disposed of, or so changed that it cannot be identified when the will goes into effect.

3. *Therefore,* where the testator devised that "portion of the purchase money of my old home plantation which I sold to my son Clarkson, as may be still owing me at my death, and any of this money then on hand shall be equally divided among my children," &c., but received this money in his lifetime, deposited it in bank, withdrew it and invested it in bonds, which he subsequently sold and with the proceeds purchased bank stocks; *Held,* that the legacies mentioned were specific and were " adeemed."

(*Noel* v. *Vannoy,* 6 Jones Eq., 185, cited and distinguished; *Snowden* v. *Banks,* 9 Ired., 373; *Tayloe* v. *Bond,* Busb. Eq., 5; *Anthony* v. *Smith, Ibid.,* 188, cited and approved).

The executor of Reuben Starbuck, filed his petition in the Superior Court before the clerk of Guilford county, for the final settlement of the estate, alleging that on account of the disagreement of the legatees, as to the proper construction of the will, that it was necessary that the Court shall construe the will, and direct his distribution of the fund amongst the legatees.

The executor asked for several instructions on several points. Defendant, T. C. Starbuck, answered, alleging that the legatees in item 4th were adeemed by the testator.

The defendants Wheeler and wife and Horney, answered, denying the ademptions, and claiming one-third of the fund in item fourth, or so much thereof as the law allows.

The issues of law and fact were certified to the Superior Court at Term, and came on for trial before *Shepherd, Judge,* at Spring Term, 1885, of GUILFORD Superior Court, on the question of law raised on the complaint by the executor himself, as to the construction of the will, as set forth by him and by the answers.

The fourth item of the will of the testator of the plaintiff, provides as follows:

"*Item Fourth.*— I will and devise that such portion of the purchase money of my old home plantation which I sold to my son Clarkson as may still be owing me at my death, and any of this money then on hand, shall be equally divided between my said children Elihu, Darius, Lewis and Benjamin, or their representatives, share and share alike. I have left Clarkson out of this division, because in the sale of the land to him I let him deduct from it his share."

This was changed and modified by a *codicil* dated 22d day of February, 1875, as follows: * * * * "and that the division in said fourth item of said will shall be made into five shares instead of four shares, so that my son Uriel's said children shall come in for one-fifth part of the division in said item four."

It appeared that the testator in his lifetime received the whole of the purchase money mentioned in the *item* of the will above set forth prior to the year 1875, and deposited the same in the First National Bank of Salem; that afterwards, in 1879, he with-

drew the deposit and invested the money in four per cent. United States bonds; and afterwards he sold these bonds, and with the proceeds of the sale purchased bank stock of the Wachovia Bank.

His Honor, upon consideration, held that the legacies in item fourth were not adeemed, and that they were payable out of the Wachovia Bank stock.    Defendant T. C. Starbuck excepted. His Honor then rendered a judgment construing the will, from which judgment defendant T. C. Starbuck appealed to the Supreme Court.

*Messrs. Scott & Caldwell*, for the appellants.
*Mr. J. H. Dillard*, for the appellees.

MERRIMON, J.    A legacy is *specific* when the thing bequeathed is personal property specified and so designated as that that particular thing, and no other in its stead, must pass to the legatee. The legacies referred to were specific.    The money designated by definite terms was itself bequeathed—that identical money and no other; they were not each for a sum fixed, to be paid out of the fund called "the purchase money of my old home plantation," &c., but they give and embrace that, and only that, money.

Specific legacies are said to be adeemed, when in the lifetime of the testator, the particular thing bequeathed is lost, destroyed, or disposed of, or it is changed in substance or form, so that it does not remain at the time the will goes into effect in specie, to pass to the legatees.    If the subject matter of such legacies ceases to belong to the testator, or is so changed as that it cannot be identified as the same subject matter, during his lifetime, then they are adeemed—gone—and never become operative.    This is so, because the thing given is gone, and nothing remains in that respect upon which the will can operate.    *Snowden* v. *Banks*, 9 Ired., 373; *Tayloe* v. *Bond*, Busb. Eq., 5; *Anthony* v. *Smith*, Busb. Eq., 188; *Walton* v. *Walton*, 7 John Ch. R., 258; Williams on Ex'rs, 1132; Redfield on Wills, Pt. 2, 528.

There has been much diversity of judicial decision as to what disposition of, or change or modification of the substance or form

of the subject matter of a specific legacy will work its ademption; but applying to this case any reasonable views of the rule pertinent, we think the legacies in question were adeemed.

There is nothing in the will of the testator that can be construed as indicating any intention on his part that it should take effect at any time before his death. It therefore took effect just as if it had been executed immediately before he died. The Code, §2141.

Obviously, at the time of his death, the testator did not have "the purchase money of my (his) old home plantation," or any part of it, "on hand;" on the contrary, he had received the whole of it years before his death, had at first deposited it and other moneys in a bank, without designating it as arising from any particular source, and afterwards, in 1879, he withdrew it from the bank and purchased with it United States bonds; and afterwards he sold the bonds, and with the proceeds, or, perhaps, with the bonds themselves, purchased the bank stock. It may be that the mere deposit of the money at first intended to be bequeathed, would not of itself work the ademption of the legacies, as the exact sum of money might be received from the bank on demand, according to the course of business; but if this be so, the withdrawal and use of it in the purchase of the United States bonds, disposed of, exchanged it for another species of property, as certainly as if the testator had purchased with it a tract of land, a stock of goods, a horse, or any other property; by such a purchase he ceased to have the money—he parted with it absolutely. The bonds were not money—they were evidence of the current public indebtedness of the government, put upon the market to be bought and sold, sometimes at one price, sometimes at another, just as any other species of property might be.

The same may be said of the bank stock. It did not represent so much money—it was evidence of the right of the owner to share in the dividends that might from time to time be declared by the bank, and to share in its assets when it should expire or be dissolved, and its business affairs wound up—it was bought and sold like other property. Money is not so bought

and sold : its sole office, as money, is to serve the purpose of making exchanges of value—it is useful as the representative of value. The bonds and bank stock are useful as articles of trade in the course of business.

It was insisted on the argument, that the testator *intended* that the bonds and the bank stock should represent and stand in the place of the money intended to be given, and that the clause of the *codicil* to the will above quoted was evidence of such intent. The plain answer to this contention is, he did not say so, nor did he say so in a subsequent *codicil*, executed on the 12th day of February, 1880, in which he merely excluded one of his sons from sharing at all in his estate. He may or may not have so intended. But it is not sufficient that a testator intended to make a particular bequest—he must have done so according to the established rules of law, else his purpose must fail. 'We must construe the will as it comes to us. We have no authority to add to, take from, or modify it by conjecture founded on remote and vague inference as to the testator's intention; it must be interpreted by what is said and appears in it, according to well settled rules of construction.

The counsel for the appellees relied upon the case of *Noel* v. *Vannoy,* 6 Jones Eq., 185. That case is essentially different from the present one. There, the language employed by the testator was very broad and comprehensive, and embraced within its compass the fund specifically bequeathed, although it might undergo considerable alteration. The decision is based upon the comprehensiveness of the language used. The testator gave the *"proceeds of the sale* of his town property," &c., that is, whether the same be money, or notes taken and remaining at the time of his death. In view of the wide compass of the words, the notes taken were treated as preserving the *corpus* of the subject matter of the bequest. In the present case, simply the money designated was given—it was received by the testator in his lifetime and used in the purchase of other property; and hence the legacies were adeemed. *Snowden* v. *Banks, supra.*

The judgment of the Superior Court must be so modified as to conform to this opinion. To that end, let it be certified to that Court according to law.

Error.                                                          Reversed.