MARY ANN RUE v. W. A. CONNELL ET AL.

(Filed 16 September, 1908.)

**Wills, Interpretation of—Ademption—Intent.**

In order to establish an ademption of a specific devise, there must be an alteration in the character of the subject-matter, made or authorized by the testator himself. Therefore, when there is a devise of certain lands by their known name, concerning which there was a claim under a contract to convey made by some third person, which in the lifetime of the testator had been unsuccessfully contested by suit, and after his death it had successfully been contested and the purchase price paid to the executors and held by them free from claim of debt of the testator, and it further appearing that the testator died in possession, believing he was the owner in fee, his intention will be construed as devising, not only the land itself, but all of his right, title or interest therein, and by the specific devise the proceeds of sale of the land will go to the devisee named.

CONTROVERSY without action, submitted to *O. H. Allen, J.,* at June Term, 1908, of WARREN.

From the judgment rendered the defendants Mary Sturges and Maude Connell appealed.

*Shepherd & Shepherd* for plaintiff.
*T. M. Pittman* and *J. H. Kerr* for defendants.

BROWN, J. The material facts in this controversy are as follows: Thomas Connell died in Warren County on 1 January, 1905, leaving a will, which was duly probated. The first clause of the will is: "To my wife, Addie May Connell, during her widowhood, I give, grant and bequeath all and every right, title and interest in and to my Tusculum plantation and all its belongings, after paying all my honest debts and my burial expenses. But should she bring forth an issue or issues (children) by me, they shall be the rightful heirs thereto at her marriage or death; but should there be no issue (children) by me from her àt her marriage with another man or at her death, it shall be the rightful property of my daughter, Mary Ann Rue, her heirs and assigns."

Addie May Connell had no issue by Thomas Connell. She married Sturges in the year 1906, and is still living. She dissented from the will in due time and was allowed her dower in her husband's other lands, and a child's part of his personal estate, the latter not having been yet distributed.

At the date of the will and at the death of the testator he was in possession of the Tusculum plantation and deemed himself the owner in fee. The plantation had been sold under a trust deed and acquired by the testator, but at the date of the will a suit was pending by P. G. Alston to redeem the property. This suit resulted in favor of the testator in June, 1903, but was renewed in January, 1905, after the testator's death, and finally resulted in a judgment in favor of Alston. The facts are set out in the report of the

case in 140 N. C., 485, which facts are made a part of the record upon this appeal. After an accounting had in pursuance of the decree of this Court, the case was again brought here, and is reported in 145 N. C., p. 1.

Under the final decree the interest of Thomas Connell in the Tusculum property is fixed at $2,950, and upon payment of that sum the heirs and devisees of the said testator were required to and did execute a deed to P. G. Alston. The costs and expenses of said action, including counsel fees, to the estate of Thomas Connell were $1,000.

The fund received from Alston is now in the hands of the executors and is not needed for the payment of the debts of the said testator.

Upon the foregoing facts the plaintiff, Mary A. Rue, claims that the executors of said estate were bound to defend said action and title; that the cost thereof is no charge upon Tusculum or her, and that the $2,950 should be paid over to her, as it represents what was devised to her of Tusculum by her father.

The defendants claim that Tusculum did not belong to deceased at his death or the making of the will, and was not therefore his to give away, and therefore nothing passed to plaintiff, and she is entitled to no part of said fund received from it, but only as a residuary legatee or devisee.

It is contended by the learned counsel for the appellants that the existence of the contract of sale at the death of the testator worked an ademption of the devise to the plaintiff, and that she takes nothing under that clause of the will. The term "ademption" is used in legal parlance to describe the act by which the testator pays to his legatee in his lifetime a legacy which by his will he had proposed to give him at his death, or to denote the act by which a specific legacy has become inoperative on account of the testator having parted with the subject of it. 1 Roper Leg., 365; *Langdon v. Astor,* 16 N. Y., 40.

There must be an alteration in the character of the subject-matter of a specific legacy made or authorized by the testator himself after making his will, or it will not operate as an ademption. If the change in the form of the property is brought about by the act of another, it will not effect an ademption of the legacy if the property in its new form is in the possession of the testator at his death. 1 Underwood Wills, sec. 411. So it has been held that, where the testator has made a binding offer of sale of his property bequeathed in a will already executed at the time, which offer is not accepted and the sale not finally consummated until after the death of the testator, no ademption of the legacy is worked, but the legatee will receive the proceeds. *In re Pearce,* 8 Reports, 805; Gardner on Wills, p. 566. So, where a testator bequeathed certain notes specifically described, and then changed them by renewal into another form, securing the same debt, it was held that the legatee was entitled to the new securities. *Ford v. Ford,* 23 N. H., 212; *Gardner v. Printup,* 2 Barb. (N. Y.), 83.

Where the intention of the testator with regard to the effect of his subsequent acts is reasonably clear, such intention will largely govern.

Tested by these general principles of the doctrine, we find nothing in the facts agreed which tends to work an ademption of the specific legacy to the plaintiff. The descriptive words in the will are sufficient, not only to pass the fee simple of the Tusculum plantation to the plaintiff as remainderman, the estate *durante viduitate* having terminated, but to pass any lesser interest which the testator may have held in the property. The intention is plainly manifest that whatever rights he owned therein should ultimately become the property of the plaintiff. Between the time he made his will and his death the testator not only had made no change whatever in respect to his ownership of Tusculum, but the courts had made none for him. His

148—20

status was exactly the same when he made the will as when he died. He was during all the time in possession of the property, claiming the fee as his own, and doubtless died believing it was his without encumbrance. The will was made 11 October, 1901, and testator died 1 January, 1905. The contract of sale to P. G. Alston was made 5 December, 1898, and upon its face expired 1 October, 1899. The suit to enforce the contract was begun after the testator's death and against his heirs, and the decree of the Court is based upon findings of fact as to what transpired between the testator and Alston, but the facts in the record show that the testator repudiated the contract during his lifetime and refused voluntarily to perform it. There is not a word or act of his from which an intention can be inferred to revoke, cancel or change the legacy bequeathed to plaintiff. On the contrary, she received it on the death of testator in exactly the legal form in which he owned it at the time he made his will. This brings the case squarely within the authority relied on by appellants' counsel, who quote from a learned author, viz.: "By its very nature as the gift of a specific, identified thing, operating as the mere gratuitous transfer of the thing without any executory obligation resting on the testator or his personal representative, it follows that unless the very thing bequeathed is in existence at the death of the testator, and then forms a part of his estate, the legacy is wholly inoperative." Pomeroy Eq. Jur., sec. 1131.

The very interest which the testator owned at the date of his will passed unchanged at his death to his legatees, unmodified by his own acts or by any legal decree that had then been made. The very thing devised remained in exactly the same condition at the time of the testator's death as it was in when he made his will, and he never in his lifetime made or consented to any change in it. The doctrine is well illustrated by the other authority (*Chambers v. Kerns*, 59 N. C., 280) cited by appellants' counsel. In that case the

devisor, *after* making his will devising the land to A, sold it to B, taking B's note and giving him a bond to make title. Here was a clear conversion, and in effect a revocation of the will. The Court says, however, even then the result would have been otherwise had his intention not to revoke been manifested by a codicil. The foregoing case is where there is nothing in the will but a devise of the bare land, but the doctrine is that even where there has been a technical conversion, it will not defeat the intention of the devisor that the proceeds or all that belongs to it shall go to the devisee. In the present case there is a manifest purpose that the devisee shall have, not the land merely, but every "right, title and interest therein" and "all its belongings." Judge Redfield says (2 Redfield on Wills, p. 339): "It has ever been held that the term 'personal estates' in a will may have the effect to pass real property, where it is manifest from the whole instrument that such was the testator's intention." This shows that the *intention* governs. The same author says, in Vol. II, p. 346: "It seems to have been supposed that a devise of an estate by name which the testator had contracted to sell would only pass the legal estate for the purpose of enabling the devisee to carry the contract into effect. *Knolys v. Shepherd,* cited by the Master of Rolls in *Wall v. Bright,* 1 J. & W., 499. In this case the Lord Chancellor thought the purchase money would not pass under the devise, but unless there was some special reason leading to that conclusion it would seem natural to conclude this would be the purpose of such a devise. It ought to be construed a devise of estate subject to a contract, and of the price, when that came into the place of the estate."

In speaking of the effect of the voluntary alteration of the estate, after the making of the will, *Lord Mansfield* said that the doctrine had been carried to an "absurd extent," and adds that the alteration must have been a "material one,"

and concludes that "all that is requisite is that the testator shall at the time of his death be seized of substantially the same estate of which he was seized at the time of making the will." Vol. II, *supra*, p. 345.

Upon a review of the case, we agree with the court below that the plaintiff is entitled to receive the proceeds of the sale of the Tusculum property paid by Alston under the contract of sale and now in the hands of the executors. His Honor deducted the costs and expenses of the Alston suit, but, as plaintiff did not except and appeal, this point is not before us.

The judgment of the Superior Court is

Affirmed.