MARY KING v. S. E. SELLERS, EXECUTOR OF SAMUEL BLOSSOM.

(Filed 16 November, 1927.)

**1. Wills—Legacies—Ademption—Intent.**

Ademption, in law, denotes the destruction, revocation or cancellation of a legacy in accordance with the intent of the testator, and results either from express revocation, or is implied from acts done by the testator in his lifetime, evincing an intention to revoke or cancel the legacy.

**2. Same—Parent and Child—Reinvestment.**

A devise by the testator to his daughter of a specified legacy in a certain amount, payable to him and secured by mortgage on certain lands of the mortgagor, and the amount collected by the testator in his lifetime and diminished by his reinvestment to another with mortgage security on other lands, and outstanding at the time of the testator's death, does not alone evince the intent of the testator to adeem the legacy in its diminished amount, nothing else appearing, but the difference in money between the two investments commingled with the other funds of the testator by him in his lifetime, does show such intent to adeem to that extent.

CIVIL ACTION, before *Bond, J.,* at April Term, 1927, of NEW HANOVER.

The plaintiff, Mary King, is the daughter of Samuel Blossom. The defendant is the executor of the last will and testament of Samuel Blossom.

The plaintiff instituted this action to recover a specific legacy of $4,000 bequeathed in item six of the last will and testament of Samuel Blossom, said item being as follows: "Subject to the estate for life hereinbefore devised to my wife, and upon its termination, I give and devise to my daughter, Mary King, a mortgage of $4,000 executed by H. H. Hall, trustee, to Samuel Blossom and recorded in the office of the register of deeds of New Hanover County, in Book 81, pages 342 *et sequitur*."

The facts as set out in the complaint, with respect to the mortgage, are as follows: On 23 January, 1914, H. H. Hall executed a mortgage to Samuel Blossom, the testator, to secure a note of $4,000. Approximately six years thereafter, to wit, on 21 April, 1920, Samuel Blossom executed his will containing item six above referred to. On 27 November, 1923, H. Stein purchased from Hall the real estate covered by said mortgage. John D. Bellamy, Jr., attorney for H. Stein, delivered to Herbert McClammy, attorney for Samuel Blossom, a check for $4,022.66, which represented the principal of the Hall mortgage and $22.66 interest. On the following day Herbert McClammy, attorney for the testator, Samuel Blossom, deposited said check in the Peoples Savings Bank and took therefor a certificate of deposit payable to the order of Herbert McClammy. Nine days thereafter, to wit, on 7 December, 1923, Geo. L. Peschau executed a mortgage to the testator, Samuel Blossom, to secure a note for $3,500, and thereupon on the same day Herbert McClammy, attorney for said Blossom, cashed the certificate of deposit, depositing the proceeds in his individual name in another bank and disbursing $3,500 of said fund under the direction of said Geo. L. Peschau, mortgagor. In other words, $3,500 of this original Hall money was loaned to Peschau upon a note secured by deed of trust upon real estate.

Samuel Blossom, the testator, died in August, 1926. The Peschau note and mortgage for $3,500 was outstanding at the time of his death.

Plaintiff claims the Peschau note and mortgage under the sixth item of the will of her father, Samuel Blossom. The defendant, executor of Samuel Blossom, demurred to the complaint upon the ground that the legacy of the Hall note and mortgage had been adeemed and passed to other parties under the residuary clause of the last will and testament of Samuel Blossom. The trial judge sustained the demurrer and the plaintiff appealed.

*Woodus Kellum for plaintiff.*
*Herbert McClammy for defendant.*

BROGDEN, J.  What constitutes the ademption of a legacy under the law of this State?

The legacy in controversy was a specific legacy.  Ademption, in law, denotes the destruction, revocation or cancellation of a legacy in accordance with the intention of the testator and results either from express revocation or is implied from acts done by the testator in his lifetime, evincing an intention to revoke or cancel the legacy.  The question was considered in *Starbuck v. Starbuck,* 93 N. C., 183, and the conclusion of the Court thus stated: "Specific legacies are said to be adeemed, when in the lifetime of the testator, the particular thing bequeathed is lost, destroyed, or disposed of, or it is changed in substance or form, so that it does not remain at the time the will goes into effect in specie, to pass to the legatees.  If the subject-matter of such legacies ceases to belong to the testator, or is so changed as that it cannot be identified as the same subject-matter, during his lifetime, then they are adeemed—gone and never become operative."  Ademption may result, as a matter of law, when a testator bequeaths the legacy for a particular purpose and thereafter gives the legatee the identical sum of money for the identical purpose.  If a testator stands in *loco parentis* to the legatee and subsequently makes payments to the legatee equal to or even less than the legacy, such payments are prima facie a complete satisfaction or satisfaction *pro tanto.*  But if such relationship does not exist, the payments do not prima facie relate to the prior legacy.  In a gift of a general legacy, without reference to any particular fund to satisfy it, the intention of the testator is the controlling factor of ademption.  Parol evidence of such intention is competent.

A subsequent sale of property specifically devised or bequeathed, nothing else appearing, constitutes an ademption.  *Snowden v. Banks,* 31 N. C., 373; *Nooe v. Vannoy,* 59 N. C., 185; *Grogan v. Ashe,* 156 N. C., 287; *Perry v. Perry,* 175 N. C., 141.

The test of ademption is such a change in the subject-matter of the legacy as to destroy its identity.  In applying the test it is well to bear in mind the wise utterance of *Pearson, C. J.,* in *Nooe v. Vannoy,* 59 N. C., 185: "But it is unusual for a father to adeem, in this manner, legacies given to children and exclude them from his contemplated bounty, when there has been no change of circumstances; and for this reason the Court is slow to adopt the conclusion that it is an ademption and will seek, anxiously, for some mode of explanation."

In the *Vannoy case* the testator bequeathed "the proceeds of the sale of my town property in the town of Wilkesboro." Thereafter the testator sold the property to Nooe, and afterwards invested the proceeds and took as security the notes of other persons. The inventory of the estate disclosed the existence of these notes. The opinion of the Court proceeds: "In our case comprehensive words of description are used, and at the date of the deed to the plaintiff, Nooe, 'the proceeds of the sale' were in the hands of the testator as a security, for which he held note of the said Nooe, the testator at the time received the proceeds of sale in money, and if he afterwards invested it, and took as security the notes of other persons, it was not an ademption, because the corpus, or thing itself was not changed, and a second or third collection and reinvestment on other securities, would not change it."

The *Vannoy case* is cited with approval by the Court of Appeals of Kentucky in *Durham's Admr. v. Clay,* 134 S. W., 153. In discussing the principle the Court said: "As stated, where a legacy of personal property is changed, it does not operate as an ademption so long as it remains in specie, and the change is not radical." The West Virginia Court in *Cornwell v. Mt. Morris M. E. Church,* 80 S. E., 148, considered the question upon a state of facts disclosing that the testatrix set aside a fund of $1,000 described in the will as "coal money." Thereafter in her lifetime the money was invested in municipal bonds which were left in the bank, marked as the property of the testatrix. The Court said: "Thus the form of the fund was changed from a deposit in the bank to an investment in bonds, and, on this change of form, there is based a claim of ademption, or destruction of the legacy, but the authorities do not sustain this position. The fund had not ceased to exist, nor in any way been destroyed or lost at the date of the death of the testatrix. It remained in an altered form, and the legacy had not been satisfied by any advancement in her lifetime. That such a change does not work an ademption of the legacy is well settled by authority."

Applying these principles of law to the facts disclosed in the record, it appears that the identity of $3,500 of this fund has been preserved. The legacy was created in the proceeds of a note secured by a deed of trust upon real estate. It does not appear that the testator was instrumental in collecting this note, but when the note was paid the money was not commingled with the general estate of the testator, but, as we interpret the record, segregated as a special fund and $3,500 thereof reinvested in a note secured by a deed of trust on real estate, and therefore being the identical form of investment that existed at the time the legacy was created. Of course, the balance of the $4,000 fund, not rein-

vested, has apparently been merged in the general estate of the testator, losing its identity and thus adeemed or lost.

We are therefore of the opinion, and so hold, that upon the facts as presented, there has been no ademption of that part of the fund represented by the Peschau note, and the judgment of the court sustaining the demurrer is

Reversed.