RICHARD R. TIGHE, INDIVIDUALLY AND AS SOLE EXECUTOR OF THE LAST WILL AND TESTAMENT OF VIRGINIA FLEMMING YANCEY MICHAL, DECEASED PLAINTIFF v. WILLIAM N. MICHAL, ADMINISTRATOR C.T.A. OF THE ESTATE OF JAMES W. MICHAL, DECEASED; CAROLINE Y. TIGHE, AMELIA YANCEY BOND, RUTH G. RAY AND FLORENCE Y. CONNALLY, DEFENDANTS v. WILLIAM N. MICHAL AND MARTHA MICHAL WOOD, ADDITIONAL DEFENDANTS

No. 7829SC461

(Filed 1 May 1979)

1. Wills § 67— ademption defined

     An ademption is the extinguishment of a testamentary gift, and it generally occurs whenever the subject matter of a specific devise or bequest is not found in the estate of the testator at the time of his death.

2. Wills § 67— ademption—rule of law—intent of testator

     The principle of ademption is a rule of law which operates without regard to the testator's intent. However, the principle of ademption does not apply when the testator intends that the beneficiary of a specific gift shall have

other property in the event the property which is the subject matter of the specific testamentary gift no longer remains in his estate *in specie* at the time of his death and specifically says so according to established rules of law; in such cases, the beneficiary is enabled to claim the substitute or contingent gift as a separate specific testamentary gift by the testator.

**3. Wills § 67— ademption—incompetency of testatrix—sale of subject matter of gifts by trustees**

The principle of ademption did not apply when the testatrix became incompetent and remained incompetent until her death and the subject matter of specific testamentary gifts was sold by her trustees during her incompetency. In such case, the beneficiaries of the specific gifts are not limited to the proceeds of the sales of the subject matter which are traceable into her estate but are entitled to the entire proceeds of the sales of such gifts unless it is necessary to abate all of testatrix's testamentary gifts.

**4. Wills § 58.1— gift of stock—incompetent testatrix—purchase of additional stock by trustees—amount of stock to be received by beneficiary**

Where testatrix bequeathed all of her stock in a certain oil company to her sister, shares of stock in the oil company purchased by testatrix's trustees after she became mentally incompetent did not pass to her sister under terms of the will, since the testatrix did not intend for her trustees to be able to increase one of her testamentary gifts at the expense of another by using funds in the estate to purchase property of the same description as other property which formed the subject matter of a specific testamentary gift.

**5. Wills § 52— residuary clause—life estate—lapsed gifts**

Where testatrix's will left the residue of her estate to her husband for his lifetime or until he remarried and left specific items of property to named beneficiaries upon the husband's death or remarriage, gifts which lapsed by reason of the deaths of the beneficiaries prior to the death of the testatrix passed to testatrix's husband under the residuary clause and by intestate succession after his death or remarriage.

**6. Wills § 61.6— husband's dissent from will—absence of right to dissent when will written or when testatrix became incompetent**

The fact that the husband of the testatrix had no right to dissent at the time testatrix's will was written or at the time she became mentally incompetent did not bar his right to dissent given him by G.S. 30-1.

**7. Wills § 61.6— husband's dissent from will—effect of husband's subsequent death**

The valid exercise of a right to dissent by testatrix's husband did not terminate upon his death but passed to his estate.

APPEAL by defendants from *Ervin, Judge.* Judgment entered 31 December 1977 in Superior Court, McDOWELL County. Heard in the Court of Appeals 28 February 1979.

Virginia Flemming Yancey Michal executed her Last Will and Testament on 22 April 1958. Approximately one year later, Mrs. Michal was adjudged to be mentally incompetent as a result of a cerebral hemorrhage and never again regained competency. During her period of incompetency, various persons and corporations were appointed to act as her trustees. Those trustees managed her business affairs until her death on 13 July 1974. Shortly thereafter, Mrs. Michal's will was admitted to probate. Her husband, James W. Michal, filed a dissent from the will on 23 October 1974. However, before Mrs. Michal's estate could be settled, Mr. Michal died.

The executor of Mrs. Michal's estate filed a complaint on 28 December 1976 by which he sought a declaratory judgment construing the provisions of the will of the testatrix. The will contained several specific testamentary gifts of real and personal property. Some of the subject matter of those specific gifts had been sold by the trustees during the period of Mrs. Michal's incompetency. Additionally, various corporate stocks which formed the subject matter of certain specific testamentary gifts had undergone changes as a result of mergers, reorganizations and other such corporate activity during the incompetency of the testatrix. These facts gave rise to the issue of whether there had been an ademption of any of the specific bequests and devises.

By her will, the testatrix left all of her shares of stock in the Standard Oil Company of New Jersey to her sister, Caroline Yancey Tighe. After she executed her will and before her death, however, those shares of stock were converted into shares of stock of the Exxon Corporation as a result of corporate mergers and reorganization. On 13 September 1973, the testatrix's trustees purchased 40 additional shares of stock in the Exxon Corporation. This created an issue concerning whether those 40 shares passed to Caroline Yancey Tighe by the terms of the testatrix's will.

An issue was also presented concerning whether the dissent of the testatrix's husband from her will was valid and, if so, whether by virtue of his death he or his estate lost all rights to take a portion of the testatrix's estate pursuant to that dissent.

The trial court concluded: (1) That there had not been an ademption of any of the testamentary gifts, (2) that the 40 shares

of stock in the Exxon Corporation that had been purchased by the testatrix's trustees did not pass to Caroline Yancey Tighe by virtue of the provision of the will leaving her all of the testatrix's shares in the Standard Oil Company of New Jersey, (3) that the testatrix's husband was not barred from dissenting from the will, and (4) that the valid exercise of the right of dissent by the testatrix's husband did not terminate upon his death. Based upon its conclusions, the trial court entered an order directing the clerk of court to conduct further proceedings according to law with regard to the right of dissent of the testatrix's husband. From the entry of that judgment, the defendants appealed.

*Story, Hunter & Goldsmith, P. A., by Paul J. Story, for plaintiff appellee.*

*Everette C. Carnes for defendant appellee Caroline Yancey Tighe.*

*Van Winkle, Buck, Wall, Starnes, Hyde & Davis, P. A., by Roy W. Davis, Jr., for defendants appellants-appellees William N. Michal and Martha Michal Wood.*

*Dameron & Burgin, by Charles E. Burgin, for defendant appellant Amelia Yancey Bond.*

MITCHELL, Judge.

[1]   This appeal presents several issues involving the principle of ademption. An ademption is, quite simply, the extinguishment of a testamentary gift. Although a determination of when an ademption has taken place is often difficult, an ademption generally occurs whenever the subject matter of a specific devise or bequest is not found in the estate of a testator at the time of his death. *E.g., Starbuck v. Starbuck,* 93 N.C. 183 (1885).

In determining whether an ademption has occurred, it must first be determined whether the principle of ademption is a rule of law or a rule of construction. If it is a rule of law, then it should be applied without regard for the testatrix's intent; if it is a rule of construction, then the testatrix's intent should be a guide to the application of the principle. *See generally,* Note, *Ademption and the Testator's Intent,* 74 Harv. L. Rev. 741 (1961).

The English common law term "ademption" was taken from the Roman civil law. Page, *Ademption by Extinction: Its Practical Effects,* 1943 Wisc. L. Rev. 9 (1943). According to the civil law, the intention of the testator determined whether a legacy was extinguished by the sale of the subject matter of the legacy by the testator prior to his death. *Id.* at 14. However, in 1786, Lord Thurlow indicated that the civil law concerning ademption was never adopted by the English courts. *Ashburner v. Macguire,* 29 Eng. Rep. 62, 63 (1786). Three years later Lord Thurlow concisely stated his view of the principle of ademption as it existed in the English common law:

> When the case of *Ashburner v. M'Gwire* was before me, I took all the pains I could to sift the several cases upon the subject, and I could find no certain rule to be drawn from them, except this, to inquire whether the legacy was a specific legacy (which is generally the difficult question in these cases), and if specific, whether the thing remained at the testator's death . . . . And I do not think that the question in these cases turns on the intention of the testator.

*Stanley v. Potter,* 30 Eng. Rep. 83, 84 (1789).

In *Snowden v. Banks,* 31 N.C. 373 (1849), the Supreme Court of North Carolina apparently applied the principles set forth in Lord Thurlow's statement of the law concerning ademption. In that case, Chief Justice Ruffin indicated that, if the subject matter of a specific testamentary gift was not found in the testator's estate, the gift would fail. He also indicated that the intent of the testator would not prevent the ademption of a specific testamentary gift, unless that intent was so clearly stated as to itself form an express substitute or contingent testamentary gift which would prevent issues of ademption from arising.

In *Starbuck v. Starbuck,* 93 N.C. 183 (1885), the Court reaffirmed its position with regard to the rule of ademption. The Court indicated that an ademption occurred "when in the lifetime of the testator the particular thing bequeathed is lost, destroyed, or disposed of, or it is changed in substance or form, so that it does not remain at the time the will goes into effect in specie, to pass to the legatees." *Id.* at 185. Although one of the parties in that case contended that the testator did not intend that there be an ademption of the gift, the Court said that, "it is not sufficient

that a testator intended to make a particular bequest; he must have done so according to established rules of law, else his purpose must fail." *Id.* at 187.

In *Rue v. Connell*, 148 N.C. 302, 62 S.E. 306 (1908), the Court apparently adopted another view of the rule of ademption, although it did not expressly overrule any of the prior cases. There, the Court described an ademption as "the act by which a specific legacy has become inoperative on account of the testator having parted with the subject of [the legacy]." *Id.* at 304, 62 S.E. at 307. The Court additionally made the following remarks concerning ademption:

> There must be an alteration in the character of the subject-matter of a specific legacy made or authorized by the testator himself after making his will, or it will not operate as an ademption. If the change on the form of the property is brought about by the act of another, it will not effect an ademption of the legacy if the property in its new form is in the possession of the testator at his death. . . .
>
> Where the intention of the testator with regard to the effect of his subsequent act is reasonably clear, such intention will largely govern.

*Id.* at 305, 62 S.E. at 307.

Apparently following its position in *Rue*, the Court indicated in *King v. Sellers*, 194 N.C. 533, 140 S.E. 91 (1927), that the intention of the testator should be considered in deciding whether an ademption had occurred. In that case, the Court defined ademption as "the destruction, revocation or cancellation of a legacy in accordance with the intention of the testator and results either from express revocation or is implied from acts done by the testator in his lifetime, evincing an intention to revoke or cancel the legacy." *Id.* at 535, 140 S.E. at 92. That definition was again recited by the Court in *Tyer v. Meadows*, 215 N.C. 733, 3 S.E. 2d 264 (1939).

In the later case of *Green v. Green*, 231 N.C. 707, 58 S.E. 2d 722 (1950), the Court appeared to have returned to the common law view of ademption. There, the Court stated:

The principle of ademption is firmly imbedded in the law of wills, and is recognized in this jurisdiction as applicable to specific legacies as a rule of law rather than of particular intent on the part of the testator. *Grogan v. Ashe*, 156 N.C. 286 (291), 72 S.E. 372; Page on Wills, sec. 1527. It applies to defeat a bequest where the subject of a specific legacy has been withdrawn, disposed of, or has ceased to exist during the lifetime of the testator. . . . Said *Chief Justice Pearson* in *Chambers v. Kerns*, 59 N.C. 280, "These are well settled principles of law, and if by their application the intention of the testator is disappointed, the Court can say it is not the fault of the law, but the neglect of the testator in not adding a codicil to set out his intention, made necessary by the alteration in the condition of his estate caused by his act."

*Id.* at 709, 58 S.E. 2d at 723-24.

More recently, the Court recognized the seeming inconsistency in the two lines of authority relating to ademptions and pointed out that:

The history of this Court's decisions reflects the difficulties of application of this principle and reveals conflict upon the matter of whether ademption by extinguishment or alienation depends upon the intention of the testator or simply operates as a matter of law, depending entirely on whether the specific property given by the testator remains *in specie* in the estate at the time of the testator's death.

*Grant v. Banks*, 270 N.C. 473, 477, 155 S.E. 2d 87, 90 (1967). The Court then sought to bring the two lines of authority into harmony and to make each line of authority consistent with the other when it stated that:

The cases where the Court has looked to the intent of the testator were not overruled, but were distinguished by *Green v. Green, supra*, on the ground that "those cases and others of similar import illustrate the modification of the rule when the language of the devise is sufficiently comprehensive to prevent the application of the principle of ademption."

*Id.* at 481, 155 S.E. 2d at 92-93.

[2]   Therefore, we think the teaching of *Grant* is that the principle of ademption is a rule of law which operates without regard to

the testator's intent. We further think that case teaches that, when the testator's intent is so clearly set forth in the will as to become a part of it and to specifically state that the beneficiary of a specific testamentary gift shall have other property in the event the property which is the subject matter of the specific testamentary gift no longer remains in his estate *in specie* at the time of his death, the principle of ademption does not apply. In other words, to prevent the application of the principle of ademption, the testator must *both* intend that the beneficiary of the specific gift have other property *and specifically say so* according to established rules of law. *See Starbuck v. Starbuck,* 93 N.C. 183, 187 (1885). In such cases, the beneficiary is enabled to claim the substitute or contingent gift provided for him as a separate specific testamentary gift by the testator which does not give rise to issues concerning the principle of ademption.

In the present case, the testatrix entirely failed to provide in her will for the possibility that the subject matter of her specific gifts might no longer remain *in specie* in her estate at the time of her death. Therefore, if the subject matter of any specific testamentary gift was not found *in specie* in her estate at the time of her death, that gift would ordinarily be defeated as a matter of law by the principle of ademption.

So long as a testator remains mentally competent until his death, an application of the principle of ademption can be rationalized on the theory that the testator would have changed his will upon the sale, loss, or destruction of any of the subject matter of his specific testamentary gift if it had been his intention that the beneficiary should receive any substitute or contingent gift. Such view would be entirely proper, as a will generally reflects the testator's testamentary intent as of the date of his death. G.S. 31-41. When a person becomes mentally incompetent, however, that person ceases to be able to form testamentary intent. In such cases, it would defy reason to hold that a testator's will reflected his testamentary intent as of the date of his death, even though it had been legally determined that the testator was incapable of forming a testamentary intent for many years prior to that date.

We do not think that the legislature intended that G.S. 31-41 require any such result. Although that statute ordinarily requires

that a will be construed as though executed immediately prior to the testator's death, our Supreme Court has indicated on several occasions that the statute will not be applied in a blind or mechanical manner and that other appropriate factors may be considered. *E.g.*, *Peele v. Finch*, 284 N.C. 375, 200 S.E. 2d 635 (1973); *Trust Co. v. Green*, 239 N.C. 612, 80 S.E. 2d 771 (1954); *Tyer v. Meadows*, 215 N.C. 733, 3 S.E. 2d 264 (1939); *Hines v. Mercer*, 125 N.C. 71, 34 S.E. 106 (1899). Additionally, the majority rule is that the principle of ademption does not apply when the testator becomes incompetent and the subject matter of a specific bequest or devise is sold by a guardian. Wiggins, *Wills and Administration of Estates in North Carolina*, § 143, p. 463. We think that our Supreme Court's overriding concern that a trustee not have the power to substitute his will for that of a testator as expressed in *Grant v. Banks*, 270 N.C. 473, 155 S.E. 2d 87 (1967) would lead it to follow the majority rule here.

[3] In the present case, we find that the will of the testatrix spoke as of the last date upon which she was capable of forming a testamentary intent. The rule of law of ademption does not apply so as to extinguish specific testamentary gifts, when the subject matter of those gifts has materially changed during the time that a testatrix is mentally incompetent if, as here, she remains incompetent until her death.

When the principle of ademption does not apply as a matter of law to a specific testamentary gift and the subject matter of the specific testamentary gift is not found in the testator's estate at the time of his death, the beneficiary is entitled to the proceeds from the sale of the subject matter of the testamentary gift. The beneficiary should not, however, be limited to the receipt of the traceable proceeds from the sale of the object of the testamentary gift, as the funds would cease to be traceable once the trustee comingled them with other funds.

In *Grant v. Banks*, 270 N.C. 473, 155 S.E. 2d 87 (1967), the Court was faced with a factual situation involving a sale of real property by a trustee pursuant to court order for the necessary support of the incompetent, which would have been a necessary and unavoidable act on the part of the incompetent if *sui juris*. At the time of the incompetent's death, a significant part of the proceeds from the sale of the real property had apparently been used

for her support. Based upon the narrow facts of that case, the Court indicated that only such part of the proceeds of the sale of the real property as were traceable into the estate and had neither been used to support the incompetent nor were required to meet debts or the costs of administration would be regarded as retaining the character of realty and pass to the beneficiary of the specific gift. We do not think that case argues against our conclusion that the beneficiaries of the specific testamentary gifts of the testatrix in the present case should not be limited to the receipt of those proceeds of the sale of the subject matter of such specific testamentary gifts as are traceable into her estate. Instead, we find support in the Court's reasoning that:

> In his limited capacity as custodian or conservator, the trustee has no power to change the will of his ward by merely commingling assets in his hands. To so hold would reach the preposterous result of allowing a guardian or trustee to rewrite and alter the provisions of a will so as to destroy the testamentary intent of the testator by merely commingling funds.

*Id.* at 485, 155 S.E. 2d at 95-96.

We find that the specific gifts of the testatrix in the present case must be treated as though they had been demonstrative gifts in the first instance. The beneficiaries should receive the entire proceeds of the sales of such gifts unless it should become necessary to abate the testamentary gifts of the testatrix. Should this situation arise, all of the testatrix's testamentary gifts would abate in accordance with the provisions of G.S. 28A-15-5. Therefore, we find the trial court's ruling on the issue of ademption without error.

[4] The appellants also raise issues relating to the trial court's ruling concerning the 40 shares of stock in the Exxon Corporation purchased by the trustees of the testatrix during her incompetency. The testatrix provided in her will that her sister, Caroline Yancey Tighe, would receive all of her shares of stock in the Standard Oil Company of New Jersey. Prior to the death of the testatrix, all of her shares in that company were converted to shares of stock in the Exxon Corporation as a result of corporate mergers and reorganization. As we have previously pointed out, the specific gift of stock to Caroline Yancey Tighe was not

adeemed. However, the trial court correctly concluded that the 40 shares of stock in the Exxon Corporation purchased by the testatrix's trustees after she became incompetent did not pass to Caroline Yancey Tighe under the terms of the testatrix's will. At the time the testatrix became incompetent, she ceased to be able to form testamentary intent. At no time did she ever intend that another person should have control over the testamentary disposition of her property. The testatrix clearly did not intend for her trustees to be able to increase one of her testamentary gifts at the expense of another by using funds in the estate to purchase property of the same description as other property which formed the subject matter of a specific testamentary gift. To find that Caroline Yancey Tighe should take these additional shares of stock would be tantamount to allowing the trustees of the testatrix to alter her will. Any such result is to be avoided. Therefore, the trial court's ruling with regard to these shares was correct.

[5] The trial court in its judgment indicated that certain gifts which had lapsed by reason of the deaths of the beneficiaries prior to the death of the testatrix passed to her heirs upon her death, as the will contained no residuary clause. We do not agree with this portion of the declaratory judgment of the trial court and find that it must be modified.

Item Nine of the will of the testatrix gave her husband James W. Michal "all the rest and residue of my property of every kind, character and description, including real, personal and mixed, wheresoever located, situated, or found, together with any increment thereupon added thereto" for his lifetime or until he remarries. Item Nine further directed that Ruth Alice Yancey Ray, Richard Rollins Tighe, Samuel Motz Yancey, Jr., and Amelia Whitaker Yancey were to receive specific items of property upon the death or remarriage of James W. Michal. However, the will did not contain any provision for the disposition of the remainder of the residue upon the death or remarriage of James W. Michal.

Several of the parties to this action contended that, upon the death of James W. Michal, the other beneficiaries named in Item Nine of the will were to take the residue of the estate in equal shares. The intention of the testatrix as expressed in the will does not support any such construction. The specific contingent gifts were given to the beneficiaries "in the quantity and quality set forth." Nothing in the will tends to indicate that the testatrix

intended that the named beneficiaries receive anything more than those specific gifts. Therefore, neither Ruth Alice Yancey Ray, Richard Rollins Tighe, Samuel Motz Yancey, Jr., nor Amelia Whitaker Yancey were entitled to take the remainder interest in the residue after the life estate therein of James W. Michal.

Item Nine comprises a residuary clause in that it provides for the disposition of the entire residue of the testatrix's estate, albeit for a limited period of time. Those gifts of the testatrix which lapsed by reason of the beneficiaries predeceasing the testatrix and which were not otherwise provided for in the will form a part of the residue of the testatrix's estate. *See* G.S. 31-42(c)(1)(a). Therefore, such lapsed gifts passed to James W. Michal for his lifetime or until his remarriage. To the extent that the declaratory judgment entered by the trial court is inconsistent with this result, it must be modified.

Item Nine of the will, which we have found to be a residuary clause, made no further provision, however, for the disposition of that part of the property which would remain in the testatrix's estate after the death of James W. Michal and after the specific contingent gifts in Item Nine had been satisfied. Any interest in property not disposed of by a testator's will passes by intestate succession. G.S. 31-42(c)(1)(b). Therefore, if the testatrix was not survived by a child, children, any lineal descendant of a deceased child or children, or a parent, then James W. Michal, the testatrix's surviving spouse, or his estate would take the remainder interest in the residue of the testatrix's estate according to the laws of intestate succession. G.S. 29-14(4).

The remaining issue raised on appeal involves the right of a surviving spouse to dissent from the will of a deceased spouse. The trial court in its judgment concluded that the testatrix's surviving spouse, James W. Michal, properly filed his dissent to her will with the clerk. The trial court further concluded that the right of dissent survived the death of James W. Michal and is now in full force and effect for the benefit of his estate. We agree.

The right to dissent from a will under certain specified circumstances is conferred upon a surviving spouse by G.S. 30-1. If that right was properly exercised in the present case according to the statutory requirements, the testamentary disposition of the testatrix could be altered by statute. It is entirely within the

power of the legislature to enact statutes which cause such altera-
tions of a testator's testamentary disposition of property. *Vinson
v. Chappell,* 275 N.C. 234, 166 S.E. 2d 686 (1969); *Fullam v. Brock,*
271 N.C. 145, 155 S.E. 2d 737 (1967).

**[6]**   G.S. 30-1 was enacted as a part of an act passed by the
General Assembly. 1965 N. C. Sess. Laws Ch. 849. Under the
terms of that act, G.S. 30-1 became effective upon its ratification
on 8 June 1965. *Phillips v. Phillips,* 296 N.C. 590, 252 S.E. 2d 761
(1979). From that date forward, the right to dissent from the will
of a deceased spouse was guaranteed to surviving spouses under
the circumstances specified in G.S. 30-1. "The power of the
Legislature to determine who shall take the property of a person
dying subsequent to the effective date of a legislative act cannot
be doubted." *Bennett v. Cain,* 248 N.C. 428, 431, 103 S.E. 2d 510,
513 (1958), *quoted in Fullam v. Brock,* 271 N.C. 145, 149, 155 S.E.
2d 737, 740 (1967). Therefore, the fact that the husband of the
testatrix in the present case may not have had the right to dis-
sent at the time her will was written or at the time she became
incompetent is not determinative.

A surviving husband has the right to dissent from his de-
ceased wife's will if the value of the property he would otherwise
receive from her estate is less than a specified portion of her
estate. G.S. 30-1(a). The value of all of the property in a deceased
spouse's estate is determined as of the date of death. G.S. 30-1(c).
Thus, although a surviving spouse's right to dissent may not be
established until a mathematical computation of the value of the
deceased spouse's estate is made, the right to dissent generally
arises as of the date of the death of the deceased spouse or it
never arises. *See In re Cox,* 32 N.C. App. 765, 233 S.E. 2d 926,
*review denied,* 292 N.C. 729, 235 S.E. 2d 783 (1977).

If the surviving spouse of the testatrix had the right to dis-
sent, he could properly exercise that right by filing a dissent in
accordance with the requirements of G.S. 30-2. If he filed a dis-
sent, but the mathematical computation of the testatrix's estate
revealed that he did not have the right to dissent, his dissent
would not conform to the requirements of G.S. 30-2 and would be
invalid. If it is established, however, that the surviving husband
of the testatrix had the right to dissent, he would take that por-
tion of the testatrix's estate specified in G.S. 30-3.

[7] Although the right to take property after dissenting from a will must be established, it is not a contingent right. The timely and correct filing of a proper dissent constitutes an exercise of the right to dissent and creates a vested property right in the dissenting spouse. A vested property right is alienable and descendible. Therefore, the trial court correctly concluded that the filing of a dissent by the surviving spouse of the testatrix caused him to have a vested right of dissent, if the mathematical computations which must be made pursuant to applicable statutes and the principles recently set forth in *Phillips v. Phillips*, 296 N.C. 590, 252 S.E. 2d 761 (1979) reveal that he was otherwise entitled to dissent at the time of the testatrix's death. As the issues involved came before the trial court in an action for declaratory judgment, those computations, and the resulting determinations to be made, must be made by the trial court upon remand of this case and not by the clerk. *Id.* at 603, 252 S.E. 2d at 769. The trial court correctly concluded that, if the surviving spouse of the testatrix had properly exercised the right of dissent, it was not extinguished by his death and passed to his estate.

For the reasons previously set forth, the judgment of the trial court is

Affirmed in part, modified in part and remanded.

Judges MARTIN (Robert M.) and WEBB concur.